WAKEFIELD TEACHERS ASSOCIATION *vs.* SCHOOL COMMITTEE
OF WAKEFIELD & another.[1]

No. 98-P-104.

Middlesex. June 9, 1999. - September 10, 1999.

Present: GREENBERG, GILLERMAN, & RAPOZA, JJ.

Further appellate review granted, 430 Mass. 1112 (2000).

*Public Records. School and School Committee,* Suspension from employment,
Superintendent of schools. *Statute,* Construction. *Privacy.*

Discussion of the nature of "personnel and medical files or information"
exempt from mandatory disclosure as public records under G. L. c. 4, § 7,
Twenty-sixth (*c*). [706-708]
This court concluded that a disciplinary decision and report of a superintendent
of a public school system regarding the performance of a teacher, which
resulted in the teacher's suspension for a four-week period, was, in the
circumstances, subject to mandatory disclosure under G. L. c. 66, § 10,
and not exempt under G. L. c. 4, § 7, Twenty-sixth (*c*), but that all identify-
ing references to students and, in the circumstances, the teacher should be
redacted. [708-711]

CIVIL ACTION commenced in the Superior Court Department on
May 8, 1995.

Following review by this court, 41 Mass. App. Ct. 1102
(1996), the case was heard by *James F. McHugh, III,* J., on a
statement of agreed facts.

*Ira C. Fader* for the plaintiff.

*Thomas A. Mullen* for the defendants.

*Carolyn Ridge-MacWilliam,* Special Assistant Attorney
General, for Supervisor of Public Records, amicus curiae,
submitted a brief.

GILLERMAN, J. The plaintiff, whose standing to bring this ac-
tion is not challenged, appeals from the judgment of the
Superior Court, which held that the disciplinary decision and
report of the superintendent of the town of Wakefield public
schools regarding the performance of a teacher is a public rec-

---

[1]Terrance F. Holmes, superintendent of schools.

ord under the provisions of G. L. c. 4, § 7, Twenty-sixth (c), and therefore subject to mandatory disclosure under G. L. c. 66, § 10.

The case was tried on an agreed statement of facts, which we summarize.

On March 17, 1995, the defendant Holmes signed a report summarizing his investigation of allegations that a male teacher at Wakefield Junior High School had sent "inappropriate notes" to one of his female students. Attached to the report were copies of the underlying documents that passed between the student and the teacher. The investigation involved the examination of the teacher's "notes," interviews with at least six persons, including an extensive interview with the teacher who was accompanied by two union representatives.

On March 17, the teacher, who had read the report, told Holmes that "he did not dispute the material facts set forth in the report." Holmes then gave the teacher written notice of his suspension for four weeks.[2]

On or about April 3, 1995, Holmes received a letter from a resident of Wakefield requesting "any information that you or the School Committee have regarding the suspension of a teacher at the Junior High School." The author wrote that he was "not interested in either the teacher['']s name or the student['']s name, but rather the nature of the offense for which he [had been] suspended." The writer concluded by stating that the issue needs to be resolved quickly "for the sake of our children['']s safety and the parents['] concerns."

Holmes responded on April 7. He wrote that he was "trying to walk that narrow line between my responsibility to the individuals involved and the public's right to know." Holmes then summarized the matter: the teacher claimed that the notes were only a joke intended to provide positive reinforcement, but that Holmes judged them to be more serious and "clearly crossed over the line of responsibility a teacher has to a student." Holmes added, "I have every confidence that this teacher is no danger to these children or any other children and should, upon completion of his suspension, return to his teach-

---

[2]The teacher grieved the disciplinary decision under the collective bargaining agreement. The first two stages did not yield a result favorable to the teacher, and there is no indication in the record before us that the third stage (to the school committee) has yet been undertaken.

ing position in the district without further sanction."[3] Finally, Holmes wrote that because of several points raised in the letter of April 3, he had asked for further direction from the supervisor of public records.

The acting supervisor of public records responded on May 3, 1995. In a comprehensive ten-page letter, she concluded that the disclosure of the report was mandated by G. L. c. 66, § 10, except that the names and identifying writings of the students could be redacted.

Finally, the agreed statement of facts revealed that, in addition to the letter of inquiry dated April 3, 1995, there had been several requests "from reporters and others seeking information about the teacher's case." The agreed statement did not disclose whether these additional inquiries sought the identity of the teacher.

On these stipulated facts, the judge in the Superior Court ruled that the Holmes report, including attachments, was a public record requiring disclosure with the exception of writings identifying the students. The judge also entered an injunction restraining the defendants from disclosing the report pending the outcome of appeals.

The first appeal to this court resulted in an order pursuant to Rule 1:28. A panel of this court remanded the case to the Superior Court "for an in camera inspection" of the Holmes report by the Superior Court judge. See 41 Mass. App. Ct. 1102 (1996).

In his opinion after remand, the Superior Court judge again ruled that disclosure was required, except for the redaction of names and other identifying writings of the students. The judge also continued the injunction restraining disclosure pending the outcome of an appeal.

*Discussion.* The plaintiff argues that the Holmes report is exempt from disclosure under G. L. c. 4, § 7, Twenty-sixth (c), the first clause of which provides that documents of any sort which are "personnel and medical files or information" need

---

[3]Holmes also required, as a condition of the teacher's continued employment, that the teacher "participate in a course of counselling or therapy to be approved by . . . [Holmes, and] that his counsellor or therapist report to [Holmes] . . . not less often than quarterly" until there is a written opinion that there is no further need of treatment.

not be disclosed.[4]

The leading case regarding the first clause of subparagraph (c) is *Globe Newspaper Co.* v. *Boston Retirement Bd.*, 388 Mass. 427 (1983). There the court said, "the Globe's argument gives too broad a meaning to the words 'personnel and medical files or information.' Not every bit of information which might be found in a personnel or medical file is necessarily personal so as to fall within the exemption's protection. . . . The Legislature's choice of words was intended to ensure that the scope of the exemption turn on the character of the information sought rather than on the question whether the documents containing the information constituted a file." *Id.* at 435.[5]

The question, then, is whether the Holmes report was sufficiently "personal" to fall within the exemption. While we are aware of no appellate opinion in Massachusetts involving the applicability of subparagraph (c) to a teacher discipline report, the authorities nevertheless point in the direction of the unavailability of the exemption.

The "kind of private facts that the Legislature intended to exempt from mandatory disclosure" under subparagraph (c) are " 'intimate details' of a 'highly personal' nature." *Brogan* v. *School Comm. of Westport*, 401 Mass. 306, 308 (1987), quoting from *Hastings & Sons Publishing Co.* v. *City Treasurer of Lynn*, 374 Mass. 812, 818 (1978). In *Brogan*, the documents for which an exemption was claimed were school committee records of employee absenteeism. The court held that while the release of such records had the "potential to embarrass its subjects," the records were not protected by the exemption because they were not "of a personal nature." *Id.* at 309. Contrast *Globe Newspaper Co.* v. *Boston Retirement Bd.*, 388 Mass. at 430, where the records at issue were "the medical reason given by each employee in applying and receiving his disability pen-

---

[4]The balance of subparagraph (c) (the second clause) provides, following a semicolon: "also any other materials or data relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of privacy." The plaintiff's claim of exemption under the second clause does not present a live issue on appeal in view of the redaction of the students' names from the Holmes report and our order for redaction of the teacher's name (discussed *infra*).

[5]Further on in its opinion, the court wrote that the exemption is available when the "files or information are of a personal nature *and* relate to a particular individual" (emphasis supplied). *Id.* at 438. The report specifically relates to a particular individual, and that fact is not at issue in this case.

sion." The court held that an individual's medical condition is inherently "of a personal nature." *Brogan, supra* (summarizing *Globe Newspaper Co.*).

As to the facts of this case, it cannot be said, in our view, that the performance of a teacher's duties in his contacts with his students are "intimate details" regarding the teacher's "highly personal" affairs. "Teachers hold a position of special public trust because '[a]s role models for our children they have an "extensive and peculiar opportunity to impress [their] attitude and views" upon their pupils.' " *Perryman* v. *School Comm. of Boston*, 17 Mass. App. Ct. 346, 349 (1983), quoting from *Dupree* v. *School Comm. of Boston*, 15 Mass. App. Ct. 535, 538 (1983), and *Faxon* v. *School Comm. of Boston*, 331 Mass. 531, 534 (1954). A violation of that trust is not a personal affair. See Restatement (Second) of Torts § 652D comment d (1977): "The common law has long recognized that the public has a proper interest in learning about . . . matters . . . of legitimate public concern." There is a legitimate public interest in seeing to it that violations of that trust are properly dealt with.

There are additional considerations that preclude the availability of the exemption in this case. Chief among these is the public policy expressed in G. L. c. 66, § 10(*a*), (*b*) and (*c*). Subsection (*a*) provides that "[e]very person having custody of any public record . . . shall, at reasonable times and without unreasonable delay, permit it . . . to be inspected and examined by any person." Subsection (*b*) provides that the "custodian of a public record shall, within ten days following receipt of a request for inspection . . . comply with such request." Subsection (*c*) provides that in any court proceeding precipitated by the custodian's refusal to honor the request, "there shall be a presumption that the record sought is public, and the burden shall be upon the custodian to prove with specificity the exemption which applies."

These provisions must be considered in the context of G. L. c. 4, § 7, Twenty-sixth, where public records are broadly defined to include "all documentary materials made or received by an officer or employee of any corporation or public entity of the Commonwealth, unless one of [the] statutory exemptions is applicable." *Hull Mun. Lighting Plant* v. *Massachusetts Mun. Wholesale Elec. Co.*, 414 Mass. 609, 614 (1993).

This statutory configuration expresses a "fundamental purpose to ensure public access to government documents [with the result that] . . . the statutory exemptions must be strictly and narrowly construed." *General Elec. Co.* v. *Department of Envtl. Protection*, 429 Mass. 798, 801-802 (1999). We adhere to that rule of construction in this case.

Finally, we must recognize that public employees, including teachers, "may have a diminished expectation of privacy in matters concerning their employment." *Globe Newspaper Co.* v. *Boston Retirement Bd.*, 388 Mass. at 436 n.15. See *George W. Prescott Publishing Co.* v. *Register of Probate for Norfolk County*, 395 Mass. 274, 278 (1985) ("a public official has a significantly diminished privacy interest with respect to information relevant to the conduct of his office").

· There are also important considerations that point in quite the opposite direction. Holmes, in his reply of April 7 to the initial request for information, expressed his concern for what he perceived to be his responsibility "to the individuals involved." This meant, he indicated, that it was important to recognize "this teacher is no danger to these children or any other children," and upon completion of his suspension he should "return to his teaching position."

These considerations were amplified by the judge in an insightful note to his second opinion which we quote in full:

"My conclusion in that regard is by no means an endorsement of the wisdom of a statutory scheme that requires disclosure under the present circumstances. It would not be unreasonable to conclude that disclosure of this sensitive and careful investigation and analysis would make the same kind of investigation and analysis difficult, if not impossible, in the future. An assurance of confidentiality to those who voluntarily participate in such investigations likely produces candor, see, e.g., *Cronin* v. *Strayer*, 392 Mass. 525, 531 (1984). Moreover, in an era where even a hint of impropriety in the relations between teachers and young students may produce a public reaction wholly disproportionate to the actual or suspected nature of the impropriety, forced public disclosure of investigatory reports like this one, regardless of the conclusions and judgments the reports reach, may have a decidedly negative effect on the quality and quantity of student/teacher

interactions. The wisdom of the law, however, is the Legislature's business, not the Court's, and the remedy for any social disutility flowing from the statute's operation is in the Legislature's capable hands."

These opposing considerations are worthy of close attention. They bear directly on the question of redaction. We agree that all identifying references to the students should be redacted. The matter is less clear as to the identification of the teacher. The community's legitimate interest in this matter has to do with the conduct of the teacher and the disciplinary response of Holmes. There may well be those who, reading the report, conclude that the suspension was too lenient because the teacher should have been dismissed, and there will likely be others who conclude that the suspension was too harsh because of the apparent absence of any harm done. In either event, the judgment in this case was that of the superintendent, and whether that judgment was right or wrong on the admitted facts does not turn on the identification of the teacher.

The superintendent of the public schools in a town "shall manage the system." See G. L. c. 71, § 59. The superintendent may dismiss any school employee, G. L. c. 71, § 42, and the superintendent may suspend any school employee, G. L. c. 71, § 42D. If the superintendent has failed properly to deal with a disciplinary problem with a teacher, it is the superintendent who must answer to the public as well as to the school committee who employed the superintendent. See G. L. c. 71, § 59. In none of these events is the identification of the teacher the focus of concern. Rather, the relevant inquiry is what happened, and what did the superintendent do about it. Neither inquiry requires the name of the teacher. Moreover, as the trial judge so carefully pointed out, there is the substantial risk of unintended consequences to any far-reaching, emotionally charged "investigation" by the public.

We have stated above that the author of the original inquiry expressly, and appropriately, disavowed any interest in the name of the teacher in this case. As to the subsequent inquiries, there is no showing on this record that those who made the inquiries had any interest in the name of the teacher. It may be that upon release of the Holmes report there will be some who will seek out the name of the teacher in court proceedings. We will leave that event to the Superior Court; it will be the task of a judge in that court to determine whether an adequate showing has been

made — more than four years after the events — of a justifiable need for the disclosure of the teacher's identity.

The final judgment entered in the Superior Court on November 18, 1997, is modified so as to add to the material to be redacted the following clause: "and with the exceptions of those portions of the report and attachments containing the name, address or other data which identify the disciplined teacher now or formerly at the Wakefield public schools."[6] As so modified, the judgment is affirmed.

*So ordered.*

---

[6]The final judgment originally read as follows:

"That the March 17, 1995 report prepared by Terrance F. Holmes concerning the conduct of a teacher at the Wakefield Public Schools and the attachments thereto are public records with the exceptions of those portions of the report or attachments containing the name, address, or other data that identifies any student at the Wakefield Public Schools."