## WAKEFIELD TEACHERS ASSOCIATION *vs.* SCHOOL COMMITTEE OF WAKEFIELD & another.[1]

Middlesex. March 9, 2000. - June 22, 2000.

Present: MARSHALL, C.J., ABRAMS, LYNCH, GREANEY, IRELAND, & COWIN, JJ.

*Public Records. School and School Committee,* Suspension from employment, Public record, Superintendent of schools. *Statute,* Construction. *Privacy.*

Discussion of the public records statute, G. L. c. 66, § 10, and the exemptions from disclosure created by G. L. c. 4, § 7, Twenty-sixth (*c*), for personnel files and for "other materials . . . the disclosure of which may constitute an unwarranted invasion of personal privacy." [796-797]

A disciplinary decision and report of a superintendent of public schools regarding the performance of a school teacher is "personnel . . . information" within the meaning of G. L. c. 4, § 7, Twenty-sixth (*c*) [797-799], and, as such, is exempt from disclosure under the public records law, G. L. c. 66, § 10 [799-800].

CIVIL ACTION commenced in the Superior Court Department on May 8, 1995.

The case was heard by *James F. McHugh, III,* J., on a statement of agreed facts.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Ira C. Fader* for the plaintiff.

*Thomas A. Mullen* for the defendants.

*Carolyn Ridge-MacWilliam,* Special Assistant Attorney General, for Supervisor of Public Records, amicus curiae, submitted a brief.

MARSHALL, C.J. We consider in this case whether a disciplinary decision and report (report) of the superintendent of Wakefield public schools (superintendent) regarding the performance of a Wakefield public school teacher is exempt from disclosure under the public records law, G. L. c. 66, § 10,[2] pursuant to

---

[1]Superintendent of Wakefield public schools.

[2]General Laws c. 66, § 10, provides in relevant part:

G. L. c. 4, § 7, Twenty-sixth (c).[3] We hold that the report, which resulted in the teacher's four-week suspension, constitutes part of the teacher's "personnel . . . file[ ] or information," and is exempt from disclosure.

1. On May 8, 1995, the Wakefield Teachers Association (teachers' association)[4] filed a complaint on behalf of the teacher for declaratory and injunctive relief, seeking to prevent the superintendent from publicly disclosing the report. A judge in the Superior Court issued a preliminary order enjoining the release of the report. The case was then tried on a statement of agreed facts.

In July, 1995, the judge issued findings of fact, rulings of law, and an order for judgment. He concluded that the report was not exempt and ordered that it be publicly disclosed, except for those portions of the report or its attachments that contained the names, addresses, or other data that identified any Wakefield student. The teachers' association appealed.[5] In an order and unpublished memorandum pursuant to its rule 1:28, the Appeals

---

"(a) Every person having custody of any public record, as defined in clause Twenty-sixth of section seven of chapter four, shall, at reasonable times and without unreasonable delay, permit it, or any segregable portion of a record which is an independent public record, to be inspected and examined by any person, under his supervision, and shall furnish one copy thereof upon payment of a reasonable fee."

[3]General Laws c. 4, § 7, Twenty-sixth, states in relevant part:

" 'Public Records' shall mean all books, papers, maps, photographs, recorded tapes, financial statements, statistical tabulations, or other documentary materials or data, regardless of physical form or characteristics, made or received by any officer or employee of any agency, executive office, department, board, commission, bureau, division or authority of the commonwealth, or of any political subdivision thereof, or of any authority established by the general court to serve a public purpose, unless such materials or data fall within the following exceptions in that they are: . . . (c) personnel and medical files or information; also any other materials· or data relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of personal privacy . . . ."

[4]Wakefield Teachers Association is an employee organization, G. L. c. 150E, and is the exclusive bargaining representative for teachers employed in the Wakefield public schools.

[5]With the agreement of the parties, the judge issued an order continuing the injunction during the pendency of the appeal.

Court vacated the judgment and remanded the matter for further proceedings to allow the trial judge to review the report in camera. *Wakefield Teachers Ass'n* v. *School Comm. of Wakefield*, 41 Mass. App. Ct. 1102 (1996). In October, 1997, the judge issued further findings of fact, rulings of law, and an order for judgment, once again concluding that the report was a public record not exempt from disclosure under G. L. c. 4, § 7, Twenty-sixth (*c*). Judgment entered on November 18, 1997. The teachers' association took a second appeal.

The Appeals Court agreed with the trial judge that the report was subject to public disclosure under G. L. c. 66, § 10, and was not exempt from disclosure under G. L. c. 4, § 7, Twenty-sixth (*c*). See *Wakefield Teachers Ass'n* v. *School Comm. of Wakefield*, 47 Mass. App. Ct. 704, 711 (1999). It concluded, however, that all identifying references to both the students and the teacher involved should be redacted. *Id.* We granted the teachers' association's application for further appellate review.

2. Sometime before March, 1995, the superintendent learned that a male teacher at Wakefield Junior High School had written potentially inappropriate notes on the homework assignments of two female students in his class.[6] The superintendent conducted an investigation into the allegations, including an interview with the teacher and two union representatives, and wrote a report.[7] As he later described in a public letter, the superintendent concluded that the teacher's conduct "crossed over the line of responsibility a teacher has to a student." His report describes his decision to impose on the teacher a suspension without pay for four weeks, pursuant to G. L. c. 71, § 42D.[8] The teacher

[6] The parents of one of the students informed the superintendent that their daughter was upset and fearful because of the notes, and because of the teacher's conduct toward her.

[7] The investigation lasted one week, and involved interviews with at least six persons and an examination of the teacher's notes to the students. The superintendent previously had given the teacher a letter instructing him to appear in the superintendent's office on a particular date to answer questions about his conduct. The letter advised him of his right to counsel, and the possibility of a suspension or discharge. The report of the superintendent consists of seven, single-spaced typed pages and includes nine pages of exhibits.

[8] General Laws c. 71, § 42D, provides in relevant part:

"The superintendent may suspend any employee of the school district subject to the provisions of this section. The principal of a

served the four-week suspension before returning to work.[9]

On April 3, 1995, a resident of Wakefield wrote to the superintendent requesting "any information . . . regarding the suspension of a teacher at the Junior High School." The resident noted that he was "not interested in either the teacher's or the student's name, but rather the nature of the offense for which he was suspended." On April 7, 1995, the superintendent responded in writing denying the request, and stating he would ask the supervisor of public records (acting supervisor) for further direction regarding the issue. He added:

> "I am further willing to share with you that a male teacher was investigated and disciplined because of notes he wrote on the homework papers of two seventh grade female students. The teacher claimed that the notes were only a joke and intended to provide positive reinforcement. I judged that the notes were more serious and clearly crossed over the line of responsibility a teacher has to a student. I have every confidence that this teacher is no danger to these children or any other children and should, upon completion of his suspension, return to his teaching position in the district without further sanction."

Town counsel requested an advisory opinion from the acting supervisor as to whether the records sought by the resident were

school may suspend any teacher or other employee assigned to the school subject to the provisions of this section. Any employee shall have seven days written notice of the intent to suspend and the grounds upon which the suspension is to be imposed; provided, however, that the superintendent may, for good cause, require the immediate suspension of any employee, in which case the employee shall receive written notice of the immediate suspension and the cause therefor at the time the suspension is imposed. The employee shall be entitled (i) to review the decision to suspend with the superintendent or principal if said decision to suspend was made by the principal; (ii) to be represented by counsel in such meetings; (iii) to provide information pertinent to the decision and to the employee's status."

[9]The teachers' association also filed a grievance under the collective bargaining agreement with the town concerning the suspension. The grievance contended that the suspension violated the contract, and the teachers' association sought "significant reduction of disciplinary action including the possibility of no disciplinary action." The first two stages of the grievance process did not yield a result favorable to the teacher. There is no indication in the record concerning the third stage, which is to advance the matter to the school committee.

"public records" subject to disclosure within the meaning of G. L. c. 66, § 10. The acting supervisor responded that, in her opinion, "those portions of the records which identify the suspended teacher and relate to his alleged misconduct are subject to mandatory disclosure upon request." The superintendent also received several requests from news reporters and others seeking information about the matter.

3. The question we consider is one of statutory interpretation. The public records statute, G. L. c. 66, § 10, requires a custodian[10] to make available for inspection and copying any public record on request. See G. L. c. 66, § 10 (*a*). "Public records are broadly defined and include all documentary materials made or received by an officer or employee of any corporation or public entity of the Commonwealth, unless one of [the] statutory exemptions is applicable." *Hull Mun. Lighting Plant* v. *Massachusetts Mun. Wholesale Elec. Co.*, 414 Mass. 609, 614 (1993). The Legislature has identified twelve categories of records otherwise public that are exempt from disclosure, including any "personnel and medical files or information; also any other materials or data relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of personal privacy." G. L. c. 4, § 7, Twenty-sixth (*c*).

In *Globe Newspaper Co.* v. *Boston Retirement Bd.*, 388 Mass. 427, 431 (1983), we examined the relationship between the clause "the disclosure of which may constitute an unwarranted invasion of personal privacy" and the phrase "personnel and medical files or information." We concluded in that case that, based on the structure, language, legislative history, and comparison with the analogous Federal public records exemption on which it is based, 5 U.S.C. § 552(b)(6) (1994),[11] the Massachusetts exemption, G. L. c. 4, § 7, Twenty-sixth (*c*), creates two categories of records exempt from public disclosure:

---

[10]The superintendent has control over and access to records maintained by the school department of Wakefield, including the report that is the subject of this action.

[11]The Federal exemption to the Freedom of Information Act, 5 U.S.C. § 552(b)(6) (1994), states:

"(b) This section does not apply to matters that are: . . .

"(6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal

first "personnel and medical files or information" and second "other materials or data relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of personal privacy." *Globe Newspaper Co.* v. *Boston Retirement Bd.*, *supra* at 434. We concluded further that the phrase "relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of personal privacy" modifies *only* the second category. *Id.* at 433 ("[Insertion of a semicolon] by the Legislature in G. L. c. 4, § 7, Twenty-sixth [*c*], manifests a desire to ensure that the ['personnel and medical files or information'] clause would not be subject to the language of the modifying clause"). See *Globe Newspaper Co.* v. *Chief Med. Examiner*, 404 Mass. 132, 135 (1989).

We consider first whether a disciplinary report, such as the one at issue here, falls within the first or second category of that statutory exemption. We have no doubt that such a report is "personnel" information as that term is used in the first category of the exemption. G. L. c. 4, § 7, Twenty-sixth (*c*).[12] As *Globe Newspaper Co.* v. *Boston Retirement Bd.*, *supra*, makes clear, the Legislature plainly intended that some public records fall within the "personnel [file] or information" category, and are distinguishable from "other materials or data relating to a specifically named individual."[13] See *Sterilite Corp.* v. *Continental Cas. Co.*, 397 Mass. 837, 839 (1986) (court should interpret statutes to give effect to Legislature's intent). See also 2A N.J. Singer, Sutherland Statutory Construction § 45.12 (5th ed. 1992) ("an interpretation which emasculates a provision of a

privacy . . . ."

See *Globe Newspaper Co.* v. *Boston Retirement Bd.*, 388 Mass. 427, 432-433 (1983) (Legislature appears to have considered analogous Federal statute in drafting Massachusetts statute).

[12]The judge also concluded, correctly, that the report in this case constituted " 'personnel information' as that term is used in the statute."

[13]Material within the "personnel [file] or information" category is not limited to, nor does it extend to, all "files or information" that are located physically in an individual employee's personnel file. See *Globe Newspaper Co.* v. *Boston Retirement Bd.*, *supra* at 435 ("the scope of the exemption turn[s] on the character of the information sought rather than on the question whether the documents containing the information constituted a file"). The judge found that in this case copies of the report and notice of the suspension were kept in the teacher's individual personnel file, an investigation file maintained by the superintendent concerning this matter, and an investigation and litigation file maintained by town counsel.

statute is not preferred"). While the precise contours of the legislative term "personnel [file] or information" may require case-by-case articulation, it includes, at a minimum, employment applications, employee work evaluations, disciplinary documentation, and promotion, demotion, or termination information pertaining to a particular employee. These constitute the core categories of personnel information that are "useful in making employment decisions regarding an employee." *Oregonian Publ. Co.* v. *Portland Sch. Dist. No. 1J*, 329 Or. 393, 401 (1999).[14] It would distort the plain statutory language to conclude that disciplinary reports are anything but "personnel [file] or information." See *Globe Newspaper Co.* v. *Chief Med. Examiner, supra.*

Numerous courts, both Federal and State, that have considered the question have reached the same conclusion. Interpreting the analogous Federal Freedom of Information Act, 5 U.S.C. § 552(b)(6), Federal courts have determined that disciplinary reports are a component of an employee's personnel records, and should be so regarded in judging whether they are subject to disclosure. See, e.g., *Federal Labor Relations Auth.* v. *United States Dep't of the Navy*, 966 F.2d 747, 761 (3d Cir. 1992) (disciplinary records considered part of personnel records); *Schonberger* v. *National Transp. Safety Bd.*, 508 F. Supp. 941, 943 (D.C. 1981) (information concerning disciplinary action considered part of individual's personnel file); *Associated Dry Goods Corp.* v. *NLRB*, 455 F. Supp. 802, 815 (S.D.N.Y. 1978) (employment applications, educational attainments, disciplinary records, work evaluations, and similar material characterized as "essence" of personnel file).

State courts have also concluded that disciplinary reports are part of an individual's personnel information. See, e.g., *Oregonian Publ. Co.* v. *Portland Sch. Dist. No. 1J, supra* (" 'personnel files' would usually include information about a teacher's education and qualifications for employment, job performance, evaluations, disciplinary matters or other information useful in making employment decisions regarding an employee"); *Pivero*

---

[14]Our interpretation of "personnel [file] or information" in this context is consistent with and derives from other Massachusetts legislation. General Laws c. 149, § 52C, for example, defines a "[p]ersonnel record," as "a record kept by an employer that identifies an employee, to the extent that the record is used or has been used, or may affect or be used relative to that employee's qualifications for employment, promotion, transfer, additional compensation or disciplinary action."

v. *Largy*, 143 N.H. 187, 189-190 (1998) (" 'Personnel file' means any and all personnel records created and maintained by an employer and pertaining to an employee including and not limited to employment applications, internal evaluations, disciplinary documentations, payroll records, injury reports and performance assessments, whether maintained in one or more locations . . ."); *Swinton* v. *Safir*, 93 N.Y.2d 758, 762 (1999) (record of disciplinary charges and their resolution by dismissal considered part of personnel file). To our knowledge no appellate court has reached a contrary conclusion.

We recognize that some categories of information typically contained in an individual employee's personnel file that, for purposes of determining exemption under G. L. c. 4, § 7, Twenty-sixth (*c*), do not constitute "personnel [file] or information." For example, an employee's personnel file may contain an employee's name, home address, date of birth, and social security number. That same information may be maintained by an employer in databases for the ordinary administration of its employees, such as maintaining payroll records. See, e.g., *Hastings & Sons Publ. Co.* v. *City Treasurer of Lynn*, 374 Mass. 812, 818 (1978) (information, such as name, address, base pay, and overtime pay of individual municipal employees, found in payroll records). Such records, even though they are "personal" in that they pertain to a particular individual, are not "useful in making employment decisions" regarding a particular employee, and are more properly considered the type of information that the Legislature had in mind when it identified "other materials or data relating to a specifically named individual." G. L. c. 4, § 7, Twenty-sixth (*c*). See, e.g., *Globe Newspaper Co.* v. *Boston Retirement Bd.*, *supra* at 435 ("Not every bit of information which might be found in a personnel or medical file is necessarily personal so as to fall within the exemption's protection"); *Hastings & Sons Publ. Co.* v. *City Treasurer of Lynn, supra* at 817.

Information falling within the "personnel and medical files or information" category is absolutely exempt from disclosure. See *Globe Newspaper Co.* v. *Boston Retirement Bd.*, supra at 434 ("we should follow the plain language of our exemption and hold that [personnel and medical files and information] are absolutely exempt from disclosure"). Our inquiry, therefore, is limited to "whether the records sought are or contain [personnel

files or information]." *Id.* at 431 n.9. Only information that does not permit the identification of any individual is not exempt from disclosure. See *id.* at 438 ("personnel files or information are absolutely exempt . . . where the files or information are of a personal nature and relate to a particular individual"). While the statute does not by its terms limit the exemption for "personnel and medical files or information" to those "where the files or information are of a personal nature and relate to a particular individual," *id.*, we added that judicial gloss to explain that the legislation does not exempt from disclosure a personnel record wholly unrelated to any individual's privacy interest, such as a generic job description or generic qualification requirement for a particular level of position that might constitute part of a personnel record. The report at issue in this case pertains to one teacher only and is absolutely exempt from disclosure under the plain language of the statute.[15] See *Connolly* v. *Bromery*, 15 Mass. App. Ct. 661, 662 (1983).

The defendants suggest that our cases subsequent to *Globe Newspaper Co.* v. *Boston Retirement Bd.*, *supra*, establish that our judicial statement in that case that "personnel [files] or information" must be of a "personal nature and relate to a particular individual" to be exempt from disclosure should be interpreted to require that the personnel information concern "intimate details of a highly personal nature." The defendants misapprehend the law. The defendants would deny exemption from disclosure for *both* categories of information described in G. L. c. 4, § 7, Twenty-sixth (*c*), except where the information constitutes "intimate details of a highly personal nature." This would render meaningless the Legislature's expressed intent to create two distinct categories of information for exemption, with different standards for exemption established for each. Rather, in the case of "personnel and medical files or informa-

---

[15]The teachers' association points to two other statutes that it claims serve as indicators of the general legislative desire to maintain the confidentiality of personnel matters involving employee discipline: the open meeting law, G. L. c. 39, § 23B (2), which exempts from open hearings decisions by public bodies concerning the discipline and dismissal of employees; and G. L. c. 71, § 42C, which requires a teacher to request permission from school officials before accessing his or her own personnel file. Because we hold that the report in this case is exempt from disclosure based solely on G. L. c. 4, § 7, Twenty-sixth (*c*), we need not address those arguments, except to note that our decision here is consistent with those related legislative determinations to shield from public scrutiny the disciplinary reports of teachers.

tion," "[i]t is clear that the Legislature saw the need to establish a more sensitive and particularized balance between the public interest in disclosure and the individual's interest in personal privacy than is possible under a general exemption." *Globe Newspaper Co.* v. *Boston Retirement Bd.*, *supra* at 437. That judgment rests solely with the Legislature and "[i]t is not within the province of this court to rewrite the statute to strike a different balance." *Id.* at 436.

In any event, our decisions do not suggest otherwise. In *Pottle* v. *School Comm. of Braintree*, 395 Mass. 861, 865 (1985), we considered whether the names, home addresses, and job classifications of all school employees should be disclosed. The request was directed at an entire category of employees, not a specific individual, and sought information found regularly within the employer's payroll database. We correctly applied the standard of review associated with the second category, "other materials or data," and concluded that the information was not exempt because it would not publicize " 'intimate details' of a 'highly personal' nature."[16]

Our decision in *Pottle* is consistent with our earlier decision in *Hastings & Sons Publ. Co.* v. *City Treasurer of Lynn*, *supra*, on which *Pottle* relied. See *Pottle* v. *School Comm. of Braintree*, *supra* at 864. In *Hastings & Sons Publ. Co.*, *supra* at 814-815, we considered a request for "base salaries and overtime payments" of all categories of city employees. Consistent with our decision today, we viewed that request as one for "other materials or data relating to a specifically named individual," not as "personnel" information, and concluded that release of the employees' payroll information would not publicize " 'intimate details' of a 'highly personal' nature."[17] See *id.* at 817-818. See also *Reinstein* v. *Police Comm'r of Boston*, 378

---

[16]For a contrary result as to the home addresses of employees under the cognate Federal statute, see *United States Dep't of Defense* v. *Federal Labor Relations Auth.*, 510 U.S. 487, 489 (1994) (disclosure of home addresses of Federal civil service employees by employing agency pursuant to request made by employees' collective bargaining representative would constitute "clearly unwarranted invasion" of employees' personal privacy within meaning of Freedom of Information Act).

[17]We recognize that some aspects of our decision in *Brogan* v. *School Comm. of Westport*, 401 Mass. 306, 308 (1987), may suggest that we apply the "intimate details of a highly personal nature" standard to the first "personnel and medical files or information" category. In *Brogan*, we held that a school committee was required to release employee absentee records pursuant

Mass. 281, 284, 293 (1979) (disclosure of reports of discharge of weapons by police officers not exempt from disclosure). Cf. *Connolly* v. *Bromery, supra* at 663-664 (evaluations of instructors by students should be considered part of teacher's "personnel [file] or information" and are exempt from disclosure).

While we have no doubt this case may be resolved solely on the plain statutory language, our decision is not without regard to the legislative purpose behind the exemption codified at G. L. c. 4, § 7, Twenty-sixth (*c*). See 2A N.J. Singer, Sutherland Statutory Construction § 45.09 (5th ed. 1992). The Legislature clearly balanced competing public policy considerations that we shall not second-guess. The exemption from disclosure of personnel files and information has, among other benefits, the protection of the government's ability to function effectively as an employer.[18] As the judge perceptively noted: "It would not be unreasonable to conclude that disclosure of this sensitive and careful investigation and analysis would make the same kind of investigation and analysis difficult, if not impossible, in the future. An assurance of confidentiality to those who voluntarily participate in such investigations likely produces candor." Indeed, in this case, the superintendent noted that the teacher "cooperated fully" with the investigation. Were the teacher concerned that his cooperation would result in public disclosure, we question whether his cooperation would have been as forthcoming.

Rather than adopt the analogous Federal statute, our

---

to G. L. c. 66, § 10. *Id.* at 307. Employer records that contain an employee's name, the dates and generic classification of their absences (i.e., sick day, personal day, or vacation day) are properly viewed as payroll records ("other materials or data relating to a specifically named individual") rather than as "personnel [file] or information" as that term is used in G. L. c. 4, § 7, Twenty-sixth (*c*), even though such data might also be located in an individual employee's personnel file. See *Hastings & Sons Publ. Co.* v. *City Treasurer of Lynn,* 374 Mass. 812, 817-818 (1978), where, consistent with that classification, we determined that the information sought did not constitute " 'intimate details' of a 'highly personal' nature," and was not exempt from disclosure.

[18]The acting supervisor, in her amicus brief, argues that the report in this case is not "sufficiently personal" to be exempted from disclosure because, she claims, that "[w]hen a disciplinary action involves an employee placed in an inherent position of public trust and that trust is violated, the details of the action cannot remain private." We do not agree with the broad proposition that every disciplinary action imposed on a teacher necessarily is not "personal" by virtue of the teacher's position of public trust. The acting supervisor adopts a position that would disclose all disciplinary information on an individual teacher, a policy consideration rejected by the Legislature.

Legislature determined that the "personnel [files] and information" pertaining to an individual would be absolutely exempt from disclosure. See *Globe Newspaper Co.* v. *Boston Retirement Bd.*, *supra* at 434 ("comparison with the Federal exemption is strong evidence that we should follow the plain language of our exemption and hold that [personnel] files or information are absolutely exempt from disclosure"). The Legislature may well have considered what the trial judge described: "in an era where even a hint of impropriety in the relations between teachers and young students may produce a public reaction wholly disproportionate to the actual or suspected nature of the impropriety, forced public disclosure of investigatory reports like this one, regardless of the conclusions and judgments the reports reach, may have a decidedly negative effect on the quality and quantity of student/teacher interactions." We adhere to the legislative determination.

*Judgment reversed.*