Gants, J.
The plaintiff, Carolyn Petrell (“Petrell”), alleges in her complaint that she sought marital counseling from the defendant August Rakoczy (“Rakoczy”) when he served as the Episcopalian priest at her church, Christ Church Parish in Plymouth. Petrell claims that Rakoczy, under the guise of providing her with pastoral counseling and guidance, manipulated her into having an extramarital sexual relationship with him, thereby abusing his pastoral position and the trust implicit in that position. Petrell has brought suit against Rakoczy, who is no longer an Episcopalian priest, claiming breach of fiduciary duty and intentional infliction of emotional distress. She has also sued The Protestant Episcopal Diocese of Massachusetts (“the Diocese”) and its most senior leadership— M. Thomas Shaw (the Bishop and corporate president of the Diocese), Barbara Harris (the senior Bishop Suffragen and corporate vice president of the Diocese), and Roy Cederholm, Jr. (the junior Bishop Suffagen and a corporate officer of the Diocese) — claiming that they were negligent in hiring, supervising, and retaining Rakoczy, and breached their fiduciary duty.
This Court now considers two motions for protective orders. The first is brought by a non-party witness (who this Court will identify only by the pseudonym, “Jane Doe”), who apparently also had an extramarital relationship with Rakoczy when he served as her Priest. Jane Doe asks this Court to require that her deposition be held in strict confidence by counsel in the case to spare her from unnecessary embarrassment. The second is brought by the defendants, except for Rakoczy himself, who has yet to file a responsive pleading in this case (collectively, “the Diocese defendants”). [1] They seek an order protecting the confidentiality of three categories of documents that have been sought by Petrell in discovery: (I) the so-called “Oxford” documents, which contain information provided to the Diocese during background checks conducted of priests; (2) documents revealing sensitive personal information about Rakoczy and non-parties; and (3) documents relating to church discipline, religious doctrine and internal organization.
DISCUSSION
Under Mass.R.Civ.P. 26(c), a party or witness from whom discovery is sought, for good cause, may move for a protective order to bar or limit discovery. The Court may make “any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . .” Mass.R.Civ.P. 26(c). Neither Jane Doe nor the Diocese defendants seek through a protective order to limit the scope of the discovery furnished to Petrell in this litigation. Rather, they seek only to protect this discovery from being revealed to persons who have no need to know this information, primarily the press. Among the alternatives specifically set forth in Mass.R.Civ.P. 26(c) to address this type of request are “(5) that discovery be conducted with no one present except persons designated by the court; [and] (6) that a deposition after being sealed be opened only by order of the court.” Mass.R.Civ.P. 26(c).
In addressing these two motions, it is important to distinguish between a motion for a protective order under Mass.R.Civ.P. 26(c), like these, and a motion to impound documents filed with the court under the Uniform Rules on Impoundment Procedure. In the absence of court order, the documents at issue in these two motions — the transcript of the Jane Doe deposition and the documents furnished in response to a request for production under Mass.R.Civ.P. 34—will not routinely be filed with the Court. Mass.R.Civ.P. *146 5(d)(2). Therefore, to decide this motion, this Court need not apply the procedures required to impound documents filed with the Court.
This distinction is also critical with respect to the standard that should be applied. If Petrell had not filed suit in this action, she would have no entitlement either to question Jane Doe or to obtain documents from the Diocese. Neither Jane Doe nor the Diocese are public officials or public agencies whose records may be available on request through the Public Records Act, G.L.c. 66, § 10(b). It is only because the Massachusetts Rules of Civil Procedure grant parties in civil actions the opportunity to conduct pre-trial discovery that she can depose Jane Doe about her extramarital relationship with Rakoczy and obtain documents from the Diocese about its background check on Rakoczy and its decision-making after these allegations came to light. The purpose of civil discovery is to permit the parties to learn about the facts and circumstances of their case, so that justice can be accomplished, either through a reasonable settlement or a fair trial. Its purpose is not to permit the general public or the press to know this information. Indeed, neither the general public nor the press can be said to have a right to know this information, since, if they were to seek this information directly, Jane Doe and the Diocese could refuse their request and no court could order their cooperation.
In contrast, when a document in a court case is filed with the court, that document is presumptively available to the general public and the press as part of the general principle that judicial proceedings, both criminal and civil, are open to all. See generally Ottaway Newspapers, Inc. v. Appeals Court, 372 Mass. 539, 546 (1977); The Boston Herald, Inc. v. Sharpe, 432 Mass. 593, 603-11 (2000). When that access is denied despite the “rigorous presumption of openness,” The Boston Herald, Inc. at 608, any member of the general public or the press may seek relief from the court to obtain access to these filed documents. See generally, Uniform Rules on Impoundment Procedure, Rule 10 (allowing “any interested third person” to move to modify or terminate an order of impoundment). Documents filed with the court are treated differently from documents obtained through discovery because “ ‘the public often would not have a ‘full understanding’ of the proceeding and therefore would not always be in a position to serve as an effective check on the system’ if it were denied access to judicial records.” The Boston Herald, Inc. at 606, quoting Globe Newspaper Co. v. Pokaski, 868 F.2d 497, 502 (1st Cir.1989). In other words, the law gives the public a presumptive right of access to all documents filed with the court because the right to a public trial is one of the means devised to ensure the right to a fair trial, and the public often needs access to the court papers to determine whether a trial has been conducted fairly. There is no similar presumptive right of access to documents obtained through discovery but never filed with the court, because the former documents are not needed to obtain a full understanding of the judicial proceeding.
Essentially, what Jane Doe and the Diocese defendants ask in seeking a protective order is to prevent Petrell from using her right to obtain this information in discovery as a means of passing on private information to persons who have no right to it, specifically the press. Petrell is not opposed to a narrowly limited protective order, but is concerned that a broader protective order will diminish her ability to obtain relevant information and to present information she has obtained to a court or jury. This Court shall attempt to balance these legitimate concerns.
Jane Doe’s Motion for a Protective Order
With respect to Jane Doe’s motion for a protective order, this Court recognizes how embarrassing it may be to Jane Doe if information about her extramarital relationship with her priest were widely known, especially concerning the details of that relationship. She has not chosen to file suit against Rakoczy, and does not wish to reveal to the world what happened between them. Yet, the information she will offer at deposition may be relevant to issues in dispute in this case, and Petrell should not be barred from using this information to determine whether the Diocese had notice of Rakoczy’s improper behavior towards women who were parishioners. Therefore, this Court will allow Jane Doe’s protective order to the extent that;
1. Apart from the stenographer, the deposition of Jane Doe shall be attended by no one who is not a party to this action or an attorney who has filed a notice of appearance in this action. Copies of-the deposition transcript may be furnished only to those who were permitted to attend the deposition.
2. The information obtained during this deposition shall be communicated to others only on a strictly need to know basis, limited to those who must know this information to assist in prosecuting or defending this litigation. Counsel in this action shall maintain a list of those persons to whom they have communicated this information, and shall ensure that these persons agree to reveal this information to no one without the specific approval of counsel. It shall not be deemed a violation of this order for counsel to discuss the substance of Jane Doe’s deposition testimony with others provided Jane Doe is not identified by name and no information is communicated that would permit her identity to be determined. Nor shall it be deemed a violation of this order for counsel to explore with prospective witnesses whether they or any of the Diocese defendants had knowledge of Rakoczy’s extramarital affair with Jane Doe, and to identify her by name if needed to ascertain the answer to this question.
The Diocese’s Motion for a Protective Order
As noted earlier, the Diocese defendants seek an order protecting the confidentiality of three categories *147 of documents that have been sought by Petrell in discovery: (1) the so-called “Oxford” documents, which contain information provided to the Diocese during background checks conducted of priests; (2) documents revealing sensitive personal information about Rakoczy and non-parties; and (3) documents relating to church discipline, religious doctrine, and internal organization. This Court shall address each category separately.

The Oxford Documents

There appears to be no dispute that the Diocese routinely conducted background investigations on its clergy, including Rakoczy. As part of a background investigation, an Episcopal clergyman was asked to identity his former employers and furnish the names of references. A questionnaire was then sent to these employers and references asking questions about any past illegal or immoral conduct by that clergyman. The Diocese retained the Oxford Document Management Company to collect and evaluate the information from these questionnaires, so the documents obtained during the background investigation are referred to as the Oxford documents. To encourage candor in answering these questionnaires, the recipient was informed in writing on this questionnaire that “[ejxcept as may be required by law, the bishop or the bishop’s designated agent(s) will be the only persons to see the information you supply.”
This Court acknowledges the potential relevance of the Oxford documents in a case, as here, alleging that the Diocese was negligent in hiring, retaining, and supervising a clergyman, like Rakoczy, who underwent this background investigation. Therefore, there is no doubt that this information must be furnished to Petrell in discovery, regardless of the representation made in the questionnaire. This Court also acknowledges that the Diocese (and indeed all its parishioners) have a legitimate interest in encouraging those answering this questionnaire to be candid, and that candor would be discouraged if those answering the questionnaires believed their answers would be made public. This Court also recognizes that, if Rakoczy were a public employee, the Oxford documents that pertain to him would be exempt from disclosure under the Public Records Act because they fall within the exemption for “personnel and medical files or information.” G.L.c. 4, §7, Twenty-sixth (c) (excluding these documents from the definition of “public records”). See Wakefield Teachers Association v. School Committee of Wakefield, 431 Mass. 792 (2000). In other words, even for public employees, where the public interest in learning this information is greatest, the public does not have a right to know the content of background investigations. Therefore, this Court shall permit the defendants to mark as “Confidential” the Oxford documents concerning the background investigation of Rakoczy. These documents may be used strictly on a need to know basis and may not be distributed or shown to anyone other than the attorneys of record and their staff, the parties, experts retained by the parties, and third-party witnesses at deposition, who shall be informed of the restrictions in this Order.

■Documents Revealing Sensitive Personal Information About Rakoczy and Non-Parties

The Diocese defendants also wish to mark as “Confidential” documents that may reveal sensitive personal information about Rakoczy and non-parties. With respect to non-parties, this Court recognizes that, to the extent that document discovery includes private information about parishioners that they told to a priest, public dissemination of this information may seriously breach the implicit understanding of confidentiality that attaches to private information told in confidence to a member of the clergy. Since the parishioners reasonably cannot be expected to protect their interest in privacy, it is appropriate for the Diocese to look out for their interests. Therefore, this Court shall permit the defendants to mark as “Confidential” those documents whose disclosure “may constitute an unwarranted invasion of personal privacy" to non-party parishioners. See G.L.c. 4, §7, Twenty-sixth (c) (excluding this category of documents from the definition of “public records”). As with the Oxford documents, these documents may be used strictly on a need to know basis and may not be distributed or shown to anyone other than the attorneys of record and their staff, the parties, experts retained by the parties, and third-party witnesses at deposition, who shall be informed of the restrictions in this Order.
As to sensitive personal information about Rakoczy that Rakoczy, directly or indirectly, provided to the Diocese, the damage from revelation of this information would be suffered by Rakoczy himself, not the Diocese defendants. In contrast with information obtained from the Oxford questionnaires, the Diocese cannot maintain that revelation of this private information would discourage the candid flow of information about its clergy and that the Diocese itself would suffer as a result. Since Rakoczy is a party to this case, he can move to protect this information from disclosure, but he apparently has chosen not to contest this complaint. This Court is disinclined to provide a protective order on his behalf, when he alone is the one potentially harmed and he does not seek it himself.

Documents Relating to Church Discipline, Religious Doctrine and Internal Organization

The Diocese defendants also wish to mark as “Confidential” all documents that relate to “church discipline, religious doctrine, and internal church organization.” Allowing the Diocese to mark documents as “Confidential” that fall within this broad rubric essentially would permit the Diocese to mark virtually any document as “Confidential.” When one looks more closely at what the Diocese defendants are truly trying to protect (since Petrell has not sought documents that concern matters of church doctrine), *148 it emerges that they wish to protect documents that concern Rakoczy’s use of church property, his resignation as rector of Christ Church and subsequent renunciation of his vows as an Episcopal priest, and the Diocese’s consideration of disciplinary action' against him. The Diocese argues that dissemination of this information unfairly intrudes into ecclesiastical matters but, apart from deliberations regarding the imposition of discipline, this Court is not persuaded by that argument. This Court, however, does recognize that the Diocese has a legitimate interest in protecting internal discussions about the possible discipline of a priest, since public dissemination of that information may affect the ability of the Diocese candidly to discuss matters of discipline in the future. Therefore, this Court shall permit the defendants to mark as “Confidential" those documents revealing confidential internal discussions about possible disciplinary action against Rakoczy. As with the other confidential documents, these documents may be used strictly on a need to know basis and may not be distributed or shown to anyone other than the attorneys of record and their staff, the parties, experts retained by the parties, and third-party witnesses at deposition, who shall be informed of the restrictions in this Order.
Caveat
In issuing these protective orders, it is important to emphasize that, by themselves, they do not justify an order of impoundment under the Uniform Rules on Impoundment Procedure. For each of these protective orders, this Court has limited disclosure to those with a need to know. At some stage in this litigation, it may happen that a party reasonably will believe that the Court has a need to know information contained in a document designated “Confidential” or may even need to see the confidential document itself. In that event, the party that files a motion or memorandum with the Court disclosing confidential information shall first furnish the motion to the other parties pursuant to Superior Court Rule 9A and specifically disclose in writing that the motion or memorandum contains information previously marked “Confidential.”[2] If a party wishes to move for impoundment, it may do so at that time pursuant to the Uniform Rules on Impoundment Procedure. The Court considering that motion will need to evaluate it in view of the presumption of public access to documents filed in court, which is a different standard than this Court used to determine the appropriateness of these protective orders during pretrial discovery. Indeed, in view of that different standard, this Court specifically recognizes the possibility that confidential information maybe appropriately protected from public disclosure during discovery but may not be appropriately impounded when filed with the court.
ORDER
For the reasons stated above, this Court hereby ORDERS that:
Jane Doe’s motion for a protective order is ALLOWED to the extent that:
1. Apart from the stenographer, the deposition of Jane Doe shall be attended by no one who is not a party to this action or an attorney who has filed a notice of appearance in this action. Copies of the deposition transcript may be furnished only to those who were permitted to attend the deposition.
2. The information obtained during this deposition shall be communicated to others only a strictly need to know basis, limited to those who must know this information to assist in prosecuting or defending this litigation. Counsel in this action shall maintain a list of those persons to whom they have communicated this information, and shall ensure that these persons agree to reveal this information to no one without the specific approval of counsel.
The Diocese defendants’ motion for a protective order is ALLOWED to the extent that:
1. This Court shall permit the defendants to mark as “Confidential” the Oxford documents concerning the background investigation conducted on Rakoczy. These documents may be used strictly on a need to know basis and may not be distributed or shown to anyone other than the attorneys of record and their staff, the parties, experts retained by the parties, and third-party witnesses at deposition, who shall be informed of the restrictions in this Order.
2. This Court shall permit the defendants to mark as “Confidential” those documents whose disclosure may constitute an unwarranted invasion of personal privacy to non-party parishioners. As with the Oxford documents, these documents may be used strictly on a need to know basis and may not be distributed or shown to anyone other than the attorneys of record and their staff, the parties, experts retained by the parties, and third-parly witnesses at deposition, who shall be informed of the restrictions in this Order.
3. This Court shall permit the defendants to mark as “Confidential” those documents revealing confidential internal discussions about possible disciplinary action against Rakoczy. As with the other confidential documents, these documents may be used strictly on a need to know basis and may not be distributed or shown to anyone other than the attorneys of record and their staff, the parties, experts retained by the parties, and third-party witnesses at deposition, who shall be informed of the restrictions in this Order.
4. Petrell may contest at any time the designation of a document as “Confidential” and the Diocese defendants may withdraw the designation of a document as “Confidential” at any time.
5. Beyond that, the Diocese Defendants’ motion for a protective order is DENIED.

 Petrell has yet to move for entry of a default against Rakoczy and, to date, none has been entered.

 If a party wishes to disclose confidential Information about Jane Doe, her attorney should also be given notice at the same time as the other parties.