# DECISIONS

## OF THE

## APPEALS COURT

### OF

## MASSACHUSETTS

---

Worcester Telegram & Gazette Corporation *vs.* Chief of Police of Worcester & another.[1]

No. 02-P-1632.

Suffolk. February 4, 2003. - May 1, 2003.

Present: Perretta, Grasso, & Berry, JJ.

*Public Records. Municipal Corporations,* Public record, Police. *Police,* Records.

Discussion of guidelines for reviewing "public records" to determine whether they are, in fact, exempt from disclosure pursuant to G. L. c. 4, § 7, twenty-sixth. [3-6]

On an appeal by a city from a Superior Court decision that required the release to a newspaper's legal counsel, pursuant to G. L. c. 66, § 10, as public records, of the entire, unredacted contents of a police department file of an internal investigation into complaints lodged by an individual who had alleged police misconduct, excepting only documents containing information protected as criminal offender record information by G. L. c. 6, § 167 et seq., this court agreed with the judge's decision, except as it authorized release of a memorandum from the city's chief of police to the

---

[1]City of Worcester.

police officer against whom allegations of police misconduct had been made, notifying him of the conclusions and disciplinary determinations of the internal affairs investigation, which constituted exempt "personnel [file] or information." [6-11]


CIVIL ACTION commenced in the Superior Court Department on May 10, 2000.

Following review by the Supreme Judicial Court, 436 Mass. 378 (2002), motions for summary judgment were heard by *James P. Donohue,* J.

*David M. Moore,* City Solicitor, for the defendants.

*Vincent F. O'Rourke, Jr. (Christine S. Collins* with him) for the plaintiff.

GRASSO, J. Before us is the second phase of an ongoing endeavor by the Worcester Telegram & Gazette Corporation (the newspaper) to obtain access to a Worcester police department internal affairs file pursuant to the public records law, G. L. c. 66, § 10. See *Worcester Telegram & Gazette Corp.* v. *Chief of Police of Worcester,* 436 Mass. 378 (2002) (*Worcester I*). The file contains materials compiled during an investigation of a citizen complaint filed by Shawn Wilder against Patrolman Michael A. Tarckini following an incident on May 1, 1999 (the Wilder file).

The city of Worcester appeals from a judgment requiring the release, as public records, of the entire, unredacted contents of the Wilder file, excepting only documents containing information protected as criminal offender record information (CORI) by G. L. c. 6, §§ 167 et seq. For the reasons that follow, we conclude that materials in an internal affairs investigation are different in kind from the ordinary evaluations, performance assessments and disciplinary determinations encompassed in the public records exemption for "personnel [file] or information," the sole exemption at issue. Accordingly, we agree with the judge's decision, except as it authorizes release of a memorandum from the chief of police of Worcester (chief) to Officer

58 Mass. App. Ct. 1 (2003)                                    3

Worcester Telegram & Gazette Corporation *v*. Chief of Police of Worcester.

Tarckini notifying him of the conclusions and disciplinary determinations of the internal affairs investigation.[2]

*Background.* Earlier skirmishes in the newspaper's attempt to obtain the Wilder file focused upon the method for determining whether the materials sought were exempt from public disclosure. In *Worcester I, supra,* the Supreme Judicial Court observed that "allowing the [city] to decide unilaterally, without any oversight, what documents are subject to disclosure and what documents are exempt is wholly inconsistent with the purpose of G. L. c. 66, § 10." *Id.* at 385. The court upheld an order permitting access to the disputed "public records" under a protective order so that counsel might "particularize their arguments to the judge, citing specific materials, or portions of materials, that are exempt or subject to disclosure." *Ibid.,* quoting from *Globe Newspaper Co. v. Police Commr. of Boston,* 419 Mass. 852, 868-869 (1995).

After review of the disputed "public records" pursuant to the protective order, the parties filed cross motions for summary judgment. A judge of the Superior Court reviewed the contested documents, heard arguments, and entered the challenged judgment. On appeal by the city, a single justice of this court stayed the judgment and reported the case for decision by a panel. See Mass.R.A.P. 5, as amended, 378 Mass. 930 (1979); Rule 2:01 of the Rules of the Appeals Court, as amended, 3 Mass. App. Ct. 805 (1975).

1. *The public records law.* The primary purpose of G. L. c. 66, § 10, is to give the public broad access to governmental records. See *Globe Newspaper Co. v. Boston Retirement Bd.,* 388 Mass. 427, 436 (1983). "[D]isclosure is favored by the 'presumption that the record sought is public.' G. L. c. 66,

---

[2]In a separate proceeding in which the newspaper sought release of 111 internal affairs files covering the years 1997 and 1998, the parties entered a stipulation agreeing to be governed by the ruling in this case. Our decision governs only the Wilder file. As explained in *Worcester I,* "the applicability of [*Wakefield Teachers Assn. v. School Comm. of Wakefield,* 431 Mass. 792 (2000),] and the 'personnel files' exemption to public records disclosure can only be ascertained *after* the 'records' have been reviewed to determine their precise nature." 436 Mass. at 386. We express no view upon whether the internal affairs files sought in the related action are public records, in whole or in part, or whether the city should continue to be bound by its earlier stipulation.

§ 10(*c*)." *Worcester I*, 436 Mass. at 383. Notwithstanding the presumption favoring disclosure, the statute provides a number of specific exemptions from the definition of "public records." See G. L. c. 4, § 7, Twenty-sixth (*a*) through (*f*). The burden is upon the custodian of the requested record to prove, with specificity, the applicability of the relevant exemption. *Worcester I, supra.* "To the extent that only a portion of a public record may fall within an exemption to disclosure, the nonexempt 'segregable portion' of the record is subject to public access." *Ibid.*

The city contends that all the material in the Wilder file is categorically exempt "personnel [file] or information" because it is part of a disciplinary report. See *Wakefield Teachers Assn. v. School Comm. of Wakefield*, 431 Mass. 792, 796-797, 799 (2000) (*Wakefield*). Materials falling within that category are absolutely exempt without need to consider the impact of disclosure upon the privacy rights of a specifically named individual. See *Globe Newspaper Co. v. Chief Med. Examiner*, 404 Mass. 132, 135 (1989); *Wakefield, supra* at 797. The city posits that because internal affairs is an investigatory process that leads to officer discipline, documents and reports in an internal affairs file are "disciplinary documentation" and "disciplinary reports" within the ambit of *Wakefield, supra* at 798.

The newspaper, on the other hand, contends that *all* material in the Wilder file should be subject to disclosure because none is the type of routine personnel information that the categorical exemption for "personnel [file] or information" is intended to encompass. To buttress its argument the newspaper asserts that the public nature of the office and the awesome powers exercised by police create a compelling need for public oversight and review of a police department's internal investigations. See *Rotkiewicz v. Sadowsky*, 431 Mass. 748, 753 (2000).

Prescinding from the extreme positions offered, we view the issue more narrowly, whether as a matter of statutory interpretation the particular material in the Wilder file falls within the sole exemption claimed, under G. L. c. 4, § 7, Twenty-sixth (*c*),

for "personnel [file] or information."[3] The city asserts no claim that the materials are exempt under the second category of clause Twenty-sixth (*c*), for "other materials or data relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of privacy" (the privacy exemption). Nor does the city assert that the materials are exempt under the "investigatory exemption" set forth in G. L. c. 4, § 7, Twenty-sixth (*f*).[4] However cogent the parties' arguments might be as a matter of competing policy choices, the Legislature has determined what records should be public and what exempt from disclosure. "The Legislature clearly balanced competing public policy considerations that we shall not second-guess." *Wakefield*, 431 Mass. at 802.

While exempting "personnel [file] or information" from the broad definition of "public record," the statute does not define "personnel [file] or information." Decisions suggest that the term is neither rigid nor precise and that the determination is case-specific. "While the precise contours of the legislative term 'personnel [file] or information' may require case-by-case articulation, it includes, at a minimum, employment applications, employee work evaluations, disciplinary documentation, and promotion, demotion, or termination information pertaining to a particular employee. These constitute the core categories of personnel information that are 'useful in making employment decisions regarding an employee.' It would distort the plain statutory language to conclude that disciplinary reports are anything but 'personnel [file] or information.' " *Id.* at 798 (citation and footnote omitted). The custodian's designation of materials as "personnel [file] or information" is not dispositive of the point any more than the custodian's placement of the

---

[3] "[General Laws] c. 4, § 7, Twenty-sixth (*c*), creates two categories of records exempt from public disclosure: first 'personnel and medical files or information' and second 'other materials or data relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of personal privacy.' " *Wakefield*, 431 Mass. at 796-797.

[4] General Laws c. 4, § 7, Twenty-sixth (*f*), exempts "investigatory materials necessarily compiled out of the public view by law enforcement or other investigatory officials the disclosure of which materials would probably so prejudice the possibility of effective law enforcement that such disclosure would not be in the public interest." See *Globe Newspaper Co.* v. *Police Commr. of Boston*, 419 Mass. at 862.

material in a repository called a "personnel file." *Id.* at 797 n.13 ("Material within the 'personnel [file] or information' category is not limited to, nor does it extend to, all 'files or information' that are located physically in an individual employee's personnel file"). "There is no 'blanket exemption' to public disclosure for records kept by police departments or for investigatory materials." *Worcester I*, 436 Mass. at 383. "What is critical is the nature or character of the documents, not their label." *Id.* at 386. With these imprecise guidelines in mind, we turn to the materials at issue.

2. *The Wilder file.* The Wilder file materials fall into three broad groups. Group I consists of exchanges between the city and the complainant Wilder or his attorney. These include the complaint itself, a notice of claim under the tort claims act, and letters from the chief to Wilder advising of the start of the internal affairs investigation and then of its results.[5] Group II consists of police reports, incident reports, cards reflecting police details and rosters, arrest logs, a commercial phone book listing, and a computer printout from a hockey league website. Group III consists of documents from the internal affairs investigation proper, including memoranda from the chief to Officer Tarckini and other officers requiring information about the incident, their responses, summaries of witness interviews, a report and supplemental report, and a memorandum from the chief to Officer Tarckini detailing the results of the internal affairs investigation.

The Group I and Group II documents do not even arguably fall within any accepted interpretation of the term "personnel [file] or information." These materials do not include Tarckini's employment application, any internal evaluations, payroll records, injury reports or performance assessments. Nor do they include information about his education and qualifications for employment. See *Wakefield*, 431 Mass. at 798-799. These also do not constitute disciplinary reports, disciplinary documentation, or promotion, demotion, or termination information and hence "personnel [file] or information." *Ibid.*; *Worcester I*, 436

---

[5]We consider this last letter in greater detail in our discussion of Group III, *infra*. While advising Wilder of the results of the investigation, the letter is not a disciplinary report within the meaning of *Wakefield*.

Mass. at 386. In nature and character the Group I documents essentially constitute notice — to the city of a complaint and possible legal action, and to Wilder of the city's commencement of a formalized process for review and the results of the investigation. Group II consists of documents generated independently of the internal affairs investigation — some under different protocols for routine recording of police business, others by entities other than the city, its employees, or the complainant. The mere placement of these materials in an internal affairs file does not make them disciplinary documentation or promotion, demotion, or termination information. See *Wakefield*, 431 Mass. at 797 n.13.

Group III presents a closer question. The officers' reports, the witness interview summaries, and the internal affairs report itself clearly bear on the ultimate decision by the chief to discipline or to exonerate Officer Tarckini based upon the investigation. However, that these documents bear upon such decisions does not make their essential nature or character "personnel [file] or information." Rather, their essential nature and character derive from their function in the internal affairs process.

An internal affairs investigation is a formalized citizen complaint procedure, separate and independent from ordinary employment evaluation and assessment. Unlike other evaluations and assessments, the internal affairs process exists specifically to address complaints of police corruption (theft, bribery, acceptance of gratuities), misconduct (verbal and physical abuse, unlawful arrest, harassment), and other criminal acts that would undermine the relationship of trust and confidence between the police and the citizenry that is essential to law enforcement. The internal affairs procedure fosters the public's trust and confidence in the integrity of the police department, its employees, and its processes for investigating complaints because the department has the integrity to discipline itself.[6] A citizenry's full and fair assessment of a police department's

[6]"Policy and Procedure No. 500" of the Worcester police department, governing its internal affairs division, as effective February 28, 2002, provides in pertinent part: "The internal affairs function is important for the maintenance of professional conduct in a law enforcement agency. The

internal investigation of its officer's actions promotes the core value of trust between citizens and police essential to law enforcement and the protection of constitutional rights. See *Globe Newspaper Co.* v. *Police Commr. of Boston*, 419 Mass. at 863, 866. Disciplinary action is but one possible outcome; exoneration and protection of the officer and the department from unwarranted criticism is another.

We reject the city's contention that, viewed as a whole, the entire internal affairs file is exempt "personnel [file] or information" because it is a "disciplinary report" relative to a specific complaint about a specific police officer's actions. See *Wakefield*, 431 Mass. at 798. Definitional alchemy is not a substitute for particularized review. That the internal affairs process might lead to discipline, or even criminal action, does not transmute all materials in an internal affairs investigation into a disciplinary report, disciplinary documentation, or promotion, demotion or termination information. Such a broad construction ignores the essential directive that the legislative term "personnel [file] or information" derives its meaning from the nature or character of the document, not from its label or its repository. See *Worcester I*, 436 Mass. at 386.

The formalized nature and unique purpose of the internal affairs citizen complaint process serve to distinguish this case from *Wakefield, supra*, in which the court determined a disciplinary decision and report of a school superintendent regarding a public school teacher to be exempt "personnel [file] or information." *Id.* at 792-793.[7] It would be odd, indeed, to shield from the light of public scrutiny as "personnel [file] or

integrity of the agency depends on the integrity and discipline of each employee. To a large degree, the public image of the agency is determined by the quality of the internal affairs function in responding to allegations of misconduct by the agency or its employees. To promote these goals, it shall be the function of the Internal Affairs Division to ensure the integrity of the Worcester Police Department, and its personnel . . . .

"A proper relationship between the police and the citizens of Worcester, fostered by trust and confidence, is essential to law enforcement. This system of complaint and disciplinary procedure not only subjects officers to corrective action when acting improperly, but also protects them from unwarranted criticism when discharging their duties properly."

[7] In *Wakefield*, the superintendent was both the investigating and disciplining authority. He compiled all the information, conducted the interviews and is-

information" the workings and determinations of a process whose quintessential purpose is to inspire public confidence. Accordingly, we consider the officers' reports, the witness interview summaries, and the internal affairs report itself to be substantially different from the single, integrated report held to be "personnel [file] or information" in *Wakefield*.[8] The nature and character of these materials, and the context in which they arise, take them beyond what the legislature contemplated when exempting "personnel [file] or information."

Standing on different footing, and more like the disciplinary report in *Wakefield*, is the September 10, 1999, memorandum from the chief to Officer Tarckini detailing the findings of the internal affairs investigation and the conclusion that no disciplinary action was to be taken. The document is a notice from the disciplining authority to the particular employee advising of the disciplinary decision (that disciplinary action was not warranted). The nature and character of this document makes it part of "the core categor[y] of personnel information that [is] useful in making employment decisions regarding the employee." *Wakefield*, 431 Mass. at 798 (citation and internal quotation marks omitted).[9] While the question is close,

sued the report that described his decision to impose suspension without pay. 431 Mass. at 794. Here, by contrast, internal affairs investigators have no disciplinary authority and make only recommendations to the chief, who does not need to follow the recommendation. Any discipline based upon the investigator's recommendation requires action by the chief in accordance with other regulations and the city's procedural manual for the discipline of its employees.

[8] We recognize that there is good reason to encourage individual citizens and police to be cooperative, forthright and candid in their dealings with investigators. See *Bougas* v. *Chief of Police of Lexington*, 371 Mass. 59, 62 (1976); *Globe Newspaper Co.* v. *Police Commr. of Boston*, 419 Mass. at 859. See also *Wakefield*, 431 Mass. at 802 (assurance of confidentiality to those who participate in disciplinary investigations likely produces candor). However, concerns as to confidentiality and promotion of candor are protected not by the "personnel [file] or information" exemption, but by the privacy and investigatory exemptions.

[9] Although the nature and character of the document rather than its location are determinative, we attach some relevance to the fact that this memorandum will likely become part of Tarckini's personnel file. Policy and Procedure No. 500, see note 6, *supra*, provides: "All complaints, as well as all information gathered in the course of an Internal Affairs Investigation, with the exception

we conclude that this is a disciplinary report exempt from disclosure as "personnel [file] or information."

We acknowledge that, at first glance, the distinction drawn between the records seems an unlikely splitting of hairs: the memorandum from the chief to Officer Tarckini constitutes exempt "personnel [file] or information," while documents from the internal affairs investigation proper, including the interviews, the reports, the conclusions and recommendations, and the documenting of its results to the complainant are not so exempt. However, when considered in light of the purpose of the public records law, it is not at all illogical that the Legislature would intend the bricks and mortar of the investigation and the documenting of its results to the complainant to fall outside the exemption for "personnel [file] or information," but would intend the actual order and notice of disciplinary action issued as a personnel matter from the chief to the target of the disciplinary investigation to be exempt.

That the information contained in the chief's memorandum to Officer Tarckini is essentially identical to that contained in the letter to Wilder's attorney does not make the memorandum to Officer Tarckini a public record any more than it makes the letter to Wilder's attorney exempt "personnel [file] or information." The exemption for "personnel [file] or information" is not dependent upon whether the same information may be available, or discernible, through alternative sources. Rather, the nature and character of the document determines whether it is "personnel [file] or information." See *Worcester I,* 436 Mass. at 386. Put differently, the same information may simultaneously be contained in a public record and in exempt "personnel [file] or information."

We need not dwell upon the city's alternative contention that if the Wilder file materials are to be released, then the proper names and other identifying information of the complainant, the witnesses, and police officers (both those investigating and the subject of investigation) should be redacted. The city has emphasized that the sole issue on appeal is the applicability of the "personnel [file] or information" exemption. See *Globe*

of a written record of any official discipline imposed, shall be retained only in the offices of the Internal Affairs Division."

*Newspaper Co.* v. *Police Commr. of Boston,* 419 Mass. at 856-857. Accordingly, we do not consider the privacy exemption or interests protected by the investigatory exemption, to encourage "individual citizens to come forward and speak freely with police concerning matters under investigation, and the creation of initiative that police officers might be completely candid in recording their observations, hypotheses and interim conclusions." *Id.* at 859, quoting from *Bougas* v. *Chief of Police of Lexington,* 371 Mass. 59, 62 (1976).[10,11]

With the exception noted, we conclude that the Superior Court judge did not commit any error of law in treating the material in the Wilder file as a public record. See *Bougas* v. *Chief of Police of Lexington,* 371 Mass. at 61.[12] The city failed in its burden of proving, with specificity, the applicability of the "personnel [file] or information" exemption. See *Worcester I,* 436 Mass. at 383. We reverse so much of the judgment as provides for the public release of the September 10, 1999, memorandum from the chief of police of Worcester to Officer Tarckini (denoted document number 33 in the record). The judgment is otherwise affirmed.

*So ordered.*

---

[10]The fact that an investigation has concluded does not necessarily destroy the investigatory exemption. "[I]f an agency's investigatory files were obtainable without limitation after the investigation was concluded, future law enforcement efforts by the agency could be seriously hindered. Even materials relating to an inactive investigation may require confidentiality in order to convince citizens that they may safely confide in law enforcement officials." *Bougas* v. *Chief of Police of Lexington,* 371 Mass. at 63; *Globe Newspaper Co.* v. *Police Commr. of Boston,* 419 Mass. at 862-863.

[11]The Fair Information Practices Act (FIPA), G. L. c. 66A, which requires holders of private information to send notice to data subjects prior to release of such information, does not apply to cities and towns. A city is not an "agency" and thus not a "holder" within the meaning of FIPA. See G. L. c. 66A, §§ 1, 2(k); *Torres* v. *Attorney Gen.,* 391 Mass. 1, 7 n.9 (1984) (if a record is made public by the public records law, the personal data in it would not be covered by FIPA); *Allen* v. *Holyoke Hosp.,* 398 Mass. 372, 379 (1986).

[12]We have considered and rejected the city's contention that the judgment should be reversed for failure to comply with the Rules of Civil Procedure. The judge properly considered the parties' respective motions as cross motions for summary judgment upon an issue of law on which the material facts were not in dispute.