Sikora, Mitchell J., J.
RULING
Upon consideration of the administrative record, all motion and opposition materials, and the arguments of all parties at the hearing of July 24, 2006, the court ALLOWS the motion of plaintiff William Leeman for judgment on the pleadings.
ORDER FOR JUDGMENT
Judgment shall now enter in favor of plaintiff Lee-man as follows. The judgment is declaratory and injunctive.
(1) The decision of the defendant Supervisor of Records dated December 2, 2005, denying disclosure of the records of the Haverhill Police Department’s internal affairs is VACATED.
(2) The records of the internal affairs investigation are public within the meaning of G.L.c. 66, §10.
(3) The defendant Haverhill Police Department shall make them available to the plaintiff William Leeman and his counsel for inspection and copying.
(4) The Haverhill Police Department may redact the names, and only the names, of persons confronting an invasion of privacy or unnecessary harm to reputation by disclosure of the internal affairs records. See Globe Newspaper Co. v. Police Comm’r of Boston, 419 Mass. 852, 861 (1995). No redaction shall extend beyond the literal name and address of an individual.
REASONING
Introduction
This case presents a claim for judicial review of a decision of Alan N. Cote, Supervisor of Public Records (“Supervisor Cote”). Previously, Supervisor Cote affirmed a decision by the Haverhill Police Department denying a public records request submitted by Lieutenant William A. Leeman (“Lt. Leeman”) on the ground that the materials requested fell within the personnel files exemption of G.L.c. 4, §7(26)(c). Lt. Leeman then filed this action under G.L.c. 30A, §14 and now moves for judgment on the pleadings pursuant to Mass.R.Civ.P. 12(c) and Superior Court Standing Order 1-96.
Background
Lt. Leeman, a police officer with the Haverhill Police Department (“the Department”), was one of many subjects involved in an internal affairs investigation regarding alleged cheating on a police officer promotional examination known as the Sergeant’s Exam. The investigation exonerated Lt. Leeman and formally concluded some time prior to June of 2005. But in response to a conversation on May 23, 2005, with the Haverhill City Solicitor, Attorney William D. Cox, Jr. (“Solicitor Cox”), Lt. Leeman set out to obtain a copy of the investigation file, report # 04-01-01 (“the IA Case File”), to learn more about the investigation process and its conclusions.
In a letter dated June 12, 2005, Lt. Leeman submitted a public records request for the IA Case File to Solicitor Cox for “any and all evidentiaiy material in regards to the alleged Exam Cheating.” In a memorandum dated July 20, 2005, the Department’s Chief of Police, Alan DeNaro (“Chief DeNaro”) denied Lt. Leeman’s request “[djue to the fact that this investigation involves numerous officers ...”
Lt. Leeman then engaged counsel and on August 10, 2005, submitted a second public records request to Chief DeNaro and Solicitor Cox. Once again, Lt. Leeman requested “the complete investigation file.” As before, on August 15, 2005, Solicitor Cox denied the request, this time on the basis that the documents sought were exempt from disclosure pursuant to G.L.c. 66, §10(c) and (e).[1] Solicitor Cox explained his reasoning as follows:
It is the position of the Department that the records requested are those of a personnel [sic] nature and contain information relating to a specifically named individual(s), the disclosure of which may constitute an unwarranted invasion of personal privacy. In addition, it is also the position of the Department that the complete investigatoiy file sought in this case was compiled outside of public view by law enforcement officials, the disclosure of which would probably so prejudice the possibility of effective law enforcement that such disclosure would not be in the public interest.
On August 17, 2005, Lt. Leeman appealed Solicitor Cox’s decision to Supervisor Cote, the Supervisor of Public Records. On August 25, 2005, Supervisor Cote informed Lt. Leeman that he would have a staff attorney review the matter. On December 2, 2005, Supervisor Cote affirmed Solicitor Cox’s decision, citing G.L.c. 4, §7(26)(c). In a letter to Lt. Leeman’s attorney, Supervisor Cote explained his decision as follows:
In this appeal, the internal affairs investigation was commenced when a complaint was made by a fellow Haverhill Police Department employee and concerned a non-police matter. The investigation is not related to police corruption (theft, bribery, acceptance of gratuities), misconduct (verbal and physical abuse, unlawful arrest, harassment), or other criminal acts which would undermine the public’s trust in the police force.
This fact distinguishes this appeal from the Worcester Telegram case which involved a civilian complaint. Additionally, the public is not awaiting a response or for any action to be taken by the police department. The essential nature and character of *413 the report would relate to personnel issues between employees and not to the relationship of trust and confidence between police and citizens described in Worcester. Therefore, the responsive documents may be withheld pursuant to the personnel exception (c) as ordinary disciplinary records.
Subsequently, on December 28,2005, Lt. Leeman filed this action for judicial review pursuant to chapter 30A. He contends that Supervisor Cote’s decision is contrary to law and arbitrary and capricious.
Discussion
1. Standard of Review
The Massachusetts Administrative Procedure Act, G.L.c. 30A, §14, governs judicial review of decisions of state administrative agencies. See Allen of Michigan v. Deputy Dir. of the Div. of Employment & Training, 64 Mass.App.Ct. 370, 376 (2005). Under that section,
[e]xcept so far as any provision of law expressly precludes judicial review, any person . . . aggrieved by a final decision of any agency in an adjudicatory proceeding . . . shall be entitled to a judicial review thereof... Where a statutory form of judicial review or appeal is provided such statutory form shall govern in all respects, except as to standards for judicial review. The standards shall be those set forth in paragraph (7) of this section, except so far as statutes provide for review by trial de novo. Insofar as the statutory form of judicial review or appeal is silent as to procedures provided in this section, the provisions of this section shall govern such procedures.
G.L.c. 30A, §14. Section one of chapter 30A defines “adjudicatory proceeding” as “a proceeding before an agency in which the rights, duties or privileges of specifically named persons are required by constitutional right or by the General Laws to be determined after opportunity for an agency hearing.” “Agency,” in turn, is defined to include “any department, board, commission, division or authority of the state government.. . authorized by law to make regulations or to conduct adjudicatory proceedings,” with certain exceptions not relevant here. G.L.c. 30A, §1(2). The decision of Supervisor Cote under G.L.c. 66, §10 falls within the definition of “adjudicatoiy proceeding.” See, e.g., Worcester Telegram & Gazette Corp, v. Chief of Police of Worcester, 58 Mass.App.Ct. 1 (2003).
Under chapter 30A, the court may set aside an agency decision only if it suffers from one of six categorical defects set forth in G.L.c. 30A, §14(7). That is, (a) the decision is in violation of constitutional provisions; (b) in excess of the agency’s statutory authority; (c) based on an error of law; (d) made on unlawful procedure; (e) unsupported by substantial evidence; (f) unwarranted by the facts found by the court in the limited circumstance where constitutional provisions require judicial fact-finding; or (g) arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law. See G.L.c. 30A, §14(7). The court must apply these standards “upon consideration of the entire record, or such portions of the record as may be cited by the parties,” and must “give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it.” Id. The burden in this regard is on the plaintiff to show that the agency’s decision violated one or more of these standards. See Boston Gas v. Dep’t of Telecomms. and Energy, 436 Mass. 233, 237 (2002). Such review “shall be confined to the record” of the proceedings before the agency. G.L.c. 30A, §14(5); City of Boston v. Outdoor Adver. Bd., 41 Mass.App.Ct. 775, 776 (1996). The only circumstance in which the court may take evidence itself is “in cases of alleged irregularities in procedure before the agency,” and even then such evidence is limited to proof of such irregularity. G.L.c. 30A, §14(5).
In this case, Lt. Leeman maintains that Supervisor Cote’s decision is both erroneous as a matter of law and arbitrary and capricious. The question framed by the appeal is one of law: the correct application of the public records statutory provisions. The prior decision makers have grappled rationally with those difficult provisions and their arguable precedents. We will do the same. No arbitrary or capricious action appears from the record.
2. Error of Law
The decision of an agency may be set aside if “[biased upon an error of law.” G.L.c. 30A, §14(7)(c); see, e.g., Trustees of Clark University v. Dep’t of Pub. Utils., 372 Mass. 331, 335 (1977); Van Munching Co., Inc. v. Alcoholic Beverages Control Comm’n, 41 Mass.App.Ct. 308, 310 (1996). The law at the center of the dispute at bar is the public records statute, G.L.c. 66, §10, and the exceptions outlined in G.L.c. 4, §7.
General Laws chapter 66, §10 “requires a custodian to make available for inspection and copying any public record on request.” Wakefield Teachers Ass’n v. Sch. Comm. of Wakefield, 431 Mass. 792, 796 (2000), citing G.L.c. 66, § 10(a). The primary purpose of this statute is “to give the public broad access to government records.” Worcester Telegram, 58 Mass.App.Ct. at 3. Therefore, “[pjublic records are broadly defined and include all documentary materials made or received by an officer or employee of any corporation or public entity of the Commonwealth, unless one of the statutory exemptions is applicable.” Wakefield Teachers Ass’n, 431 Mass. at 796, quoting Hull Mun. Lighting Plant v. Mass. Mun. Wholesale Elec. Co., 414 Mass. 609, 614 (1993). The presumption is that “the record sought is public.” G.L.c. 66, § 10(c). Accordingly, the burden is on the *414 custodian “to prove with specificity the exemption which applies.” Id.
In G.L.c. 4, §7, the Legislature created an exemption for any “personnel and medical files or information; also any other materials or data relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of personal privacy.” G.L.c. 4, §7(26)(c); see also Wakefield Teachers Ass’n, 431 Mass. at 796. However, it did not provide a definition for what constitutes “personnel... files or information.” See G.L.c. 4, §7; Worcester Telegram, 58 Mass.App.Ct. at 5. In our case law, it has become clear that the definition “is neither rigid nor precise and that the determination is case-specific.” Worcester Telegram, 58 Mass.App.Ct. at 5. But at a minimum, the term includes “employment applications, employee work evaluations, disciplinary documentation, and promotion, demotion, or termination information pertaining to a particular employee.” Wakefield Teachers Ass’n, 431 Mass. at 798; accord Worcester Telegram, 58 Mass.App.Ct. at 5.
In Wakefield Teachers Association, the Supreme Judicial Court considered whether a teacher disciplinary report fell within the scope of the personnel files exemption. See Wakefield Teachers Ass’n, 431 Mass. at 797. There, a resident of Wakefield wrote to the superintendent of Wakefield Junior High School requesting information concerning the suspension of a teacher at the school. Id. at 795. Not interested in the teacher’s name, the resident simply wanted to know the nature of the teacher’s offense. Id. The superintendent denied the resident’s request. Id. While acknowledging that “the precise contours of the legislative term ‘personnel file or information’ may require case-by-case articulation,” the court focused on the phrase “useful in making employment decisions regarding an employee,” and held that “(i]t would distort the plain statutory language to conclude that disciplinary reports are anything but ‘personnel [files] or information.’ ” Id. at 799. In support of this conclusion, the court cited analogous decisions regarding disciplinary reports under the federal Freedom of Information Act, 5 U.S.C. §552(b)(6). See, e.g., Fed. Labor Relations Auth. v. United States Dep’t of the Navy, 966 F.2d 747, 761 (3d Cir. 1992); Schonberger v. Nat’l Transp. Safety Bd., 508 F.Sup. 941, 943 (D.C. 1981); Associated Dry Goods Corp. v. Nat’l Labor Relations Bd., 455 F.Sup. 802, 815 (S.D.N.Y. 1978); and a number of decisions in other states. See, e.g., Swinton v. Safir, 93 N.Y.2d 758, 762 (N.Y. 1999); Oregonian Publ’g Co. v. Portland Sch. Dist. No. 1J, 987 P.2d 480, 484 (Or. 1999); Pivero v. Largy, 722 A.2d 461, 463 (N.H. 1998).
In Worcester Telegram, the Appeals Court distinguished a police internal affairs file concerning an officer’s reported misconduct from a disciplinary report to that officer detailing the findings and conclusions of the investigation. See Worcester Telegram, 58 Mass.App.Ct. at 9. The court held the investigative material, consisting of officer reports, witness interview summaries, and the internal affairs report itself, to be subject to disclosure because the quintessential purpose of an internal affairs investigation is to instill in the public confidence in the department’s ability to investigate and to discipline itself. Id. The disciplinary result, however, even though it may contain the same information, was held exempt because it directly related to the making of “employment decisions regarding the employee.” Id. at 9-10. Thus, “the bricks and mortar of the investigation and the documenting of its results” constitute public records, but the “actual order and notice of disciplinary action issued as a personnel matter from the chief to the target of the disciplinary investigation” does not because it constitutes a personnel file or information. Id. at 10.
Upon reviewing the record, I find no basis upon which to distinguish the present case from the decision of the Appeals Court in Worcester Telegram. In both cases, the core issue is whether an internal affairs file is a public record. Absent an applicable exemption, the presumption is that the record is public. In its analysis of the personnel files exemption, Worcester Telegram drew a line between the actual internal affairs file and the notice to the subject officer of its findings and conclusion. It found the former to be public and the latter exempt. Hence, the internal affairs case file is a public record. Any actual notice or order of disciplinary action addressed to Lt. Leeman or other named officers, however, is not because it is certainly a document “useful in making employment decisions regarding an employee.”
The Department attempts to distinguish Worcester Telegram on the basis of the identity of the applicant for the file and the absence of issues of theft, bribery, acceptance of gratuities, verbal or physical abuse, unlawful arrest, or harassment. It concerns “a non-police matter,” meaning issues not related to enforcement of the law. These considerations may temper the degree of public interest in disclosure of the IA Case File, but they do not qualify the record as a personnel file or personnel information. That essential distinction is the question of the case. The statutes contain no “non-police matter” exemption. Supervisor Cote’s decision referred solely to the personnel file or personnel information exemption. Again, this exemption refers to information “useful in making employment decisions regarding an employee.” The identity of the requesting party has no bearing on this issue. The fact that neither theft, bribery, acceptance of gratuities, verbal or physical abuse, unlawful arrest, nor harassment is involved does not logically lead to the conclusion that the record must therefore be personnel information. Application of an exemption *415 depends upon the nature of the document. The custodian must establish that nature with specificity.
The Supervisor and the Department appear to argue that the present subject of alleged cheating on a promotional exam constitutes an intramural departmental matter and not a public one. The competence and integrity of a police force are intrinsically public concerns. That concern endures without regard to the identity of a complainant or inquisitor as either a member of the force or a member of the citizemy. Both groups are entitled to know that the police possess the competence and integrity to police themselves.
The Department’s contention under G.L.c. 4, §7(26) (c) that disclosure may inflict an unwarranted invasion of privacy upon its members is not decisive. First, in contrast with the circumstances of both Wakefield Teachers Association and Worcester Telegram, the individual running the greatest risk to privacy is the applicant himself. Lt. Leeman has effectively waived that interest. See In re A Subpoena Duces Tecum, 445 Mass. 685, 689 (2006) (ordering disclosure of material otherwise exempt under G.L.c. 4, §7(26)(c) upon the determination that the privacy interests at stake belonged to the parties requesting disclosure). Second, the identity of the persons named in the internal affairs investigative materials can receive protection from the litigants. At oral argument the parties reported their unawareness of likely harm to the names of other officers or persons. Counsel for Lt. Leeman expressed a willingness to protect the names of such individuals. The parties can and should do so by redaction of specific names and addresses so long as they leave open all other information. See Globe Newspaper Co. v. Police Comm’r of Boston, 419 Mass. 852, 861 (1995).
Finally, I note the same close distinctions and fortuities acknowledged by the panel in the Worcester Telegram decision, 58 Mass.App.Ct. at 10: that the internal affairs investigation papers can be public, but that a report to an officer resulting from the information in those papers cannot be public. It viewed the difference as “at first glance ... an unlikely splitting of hairs”; but at second glance as a rational effort by the courts to apply a statute riddled with conflicting objectives and literal exceptions.
For these reasons the refusal of the Haverhill Police Department and of the Supervisor of Records to disclose the documents of the internal affairs investigation as personnel files or personnel information protected by G.L.c. 4, §7(26)(c) constitutes an error of law.[2]

It appears that Solicitor Cox intended to cite G.L.c. 4, §7(26)(c) and (f) since his explanation references the personnel flies or information and investigatory materials exemptions. By contrast, G.L.c. 66, §10(c) creates the “presumption that the record sought is public,” a proposition that hinders rather than helps his case. G.L.c. 66, §10(e), on the other hand, does not exist.

The parties have not waged the case upon any other grounds, including the exemption of G.L.c. 4, §7(26)(f) for investigatory materials. Accordingly, I have confined judicial review to the administrative record and the positions and arguments of the parties throughout the administrative process and the Superior Court review.