PRESENT: All the Justices

RICHARD HAWKINS, III,

OPINION BY
v. Record No. 210848                        JUSTICE THOMAS P. MANN
                                            OCTOBER 20, 2022

TOWN OF SOUTH HILL

FROM THE CIRCUIT COURT OF MECKLENBURG COUNTY
J. William Watson, Jr., Judge

Our government belongs to the people it serves. By extension information retained by

governmental entities likewise belongs to the people subject to legislatively mandated

exceptions, one of which is explored here. This is the foundation upon which the Virginia

Freedom of Information Act ("VFOIA") rests. The government, though, is administered by

individuals who, only by virtue of their public employment, are required to divulge information

which would otherwise be private. Recognizing the tension between transparency and privacy,

we use a commonsense and plain language paradigm, directed by precedent from this jurisdiction

and aided by the statutes and cases from other states, to interpret and explain Code

§ 2.2-3705.1(1). By utilizing our interpretive holding, trial courts can manage, analyze, and

evaluate questions which arise in this context.

This appeal requires us to determine the scope of the personnel information exemption to

VFOIA and reconcile the competing interests of open access to public records and the privacy

expectations of government employees. Richard Hawkins, III ("Hawkins") appeals the partial

denial of his petition for a writ of mandamus ("Petition") and the purported denial of his request

for attorney's fees and costs by the Mecklenburg County Circuit Court. In the Petition, Hawkins

requested documents related to employment disputes in the Town of South Hill, (the "Town"), as

well as attorney's fees and costs. Because the circuit court applied a definition of "personnel

information" different from the definition outlined below, we reverse and remand for the court to

review and, if necessary, redact and release the documents at issue. Moreover, Hawkins failed to obtain a ruling from the circuit court as to who, if anyone, was the prevailing party or the issue of attorney's fees and costs. Therefore, we find that he has waived those issues on appeal.

BACKGROUND

In the Fall of 2019, Hawkins began seeking documents from the Town relating to employment disputes involving the Town Manager and various employees. Between September 2019 and January 2020, Hawkins submitted four VFOIA requests. The Town provided a response each time, however Hawkins believed that the responses were deficient.

Following the final VFOIA response from the Town, Hawkins filed his Petition, pro se. Hawkins alleged that the Town asserted VFOIA exemptions too broadly and withheld documents that should have been released or redacted. He requested the circuit court to compel the Town to produce the requested documents, impose civil penalties under VFOIA, and award him his attorney's fees and costs. The Town filed a demurrer asserting that Hawkins failed to state a cause of action upon which relief could be granted because the Town fully complied with VFOIA.

At a hearing on the demurrer, the parties narrowed the dispute before the circuit court to seven documents. Each document was withheld by the Town pursuant to the personnel information exemption set forth in Code § 2.2-3705.1(1).[1] The first document was a demand letter from a Town employee's attorney to the Town attorney regarding the employee's discrimination complaints (the "demand letter"). The second document was a one-page petition

---

[1] The circuit court ordered that the disputed documents be produced for in camera review, which "constitutes a proper method to balance the need to preserve confidentiality of privileged materials with the statutory duty of disclosure under VFOIA." *Bergano v. City of Virginia Beach*, 296 Va. 403, 410 (2018). *See also* section I.C, below. To the extent that this opinion discusses facts found in those documents, we unseal only those specific facts. *See Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

2

to the Town's personnel committee from seven employees requesting a meeting regarding the Town Manager (the "employee petition"). The third document was an email chain from a town employee to the Town Mayor and City Council regarding discipline of that employee (the "email chain"). The fourth was an unsigned document received by the Town Mayor complaining about the Town Manager and Town work environment (the "anonymous complaint"). The final three documents were resignation letters from three different Town employees (the "resignation letters").

After reviewing the documents in chambers, the circuit court issued a letter opinion granting the Petition in part. The court applied definitions of "personnel record" from a previous version of the statute, instead of "personnel information." It concluded that the anonymous complaint was not exempt from disclosure and the employee petition was partially exempt from disclosure. The circuit court agreed with the Town that the demand letter, email chain, and resignation letters were exempt under VFOIA. The court did not address the issue of fees or whether Hawkins substantially prevailed. It asked the Town to prepare the order reflecting the letter opinion, because the court "agreed with the Town's positions more than it did not."

The Town moved for entry of an order because "[Hawkins] want[ed] to address the issue of attorney's fees." Hawkins filed no opposition to the motion. He endorsed the order, objecting to the denial of mandamus as to five documents, the court not awarding attorney's fees, and the court not holding that he was a prevailing party under VFOIA. Hawkins timely noted his appeal.

ANALYSIS

I. Assignments I, II, and III: The Personnel Information Exemption

In his first three assignments of error, Hawkins challenges the circuit court's holding that the five documents were exempt from VFOIA under the personnel information exemption.

3

## A. Standard of Review

All three assignments address the circuit court's interpretation and application of Code § 2.2-3705.1(1). "Whether documents . . . should be excluded under [VFOIA] is a mixed question of law and fact." *Virginia Dep't of Corr. v. Surovell*, 290 Va. 255, 262 (2015) (quoting *American Tradition Inst. v. Rector and Visitors of the Univ. of Va.*, 287 Va. 330, 338 (2014)) (alteration added). "[W]e give deference to the trial court's factual findings and view the facts in the light most favorable to the prevailing part[y]." *Id.* (quoting *American Tradition Inst.*, 287 Va. at 338-39) (first alteration added, second alteration in original). However, this Court "reviews issues of statutory interpretation and a circuit court's application of a statute to its factual findings, de novo." *Cole v. Smyth Cnty. Bd. of Supervisors*, 298 Va. 625, 636 (2020) (citing *Surovell*, 290 Va. at 262).

## B. Interpretation of Code § 2.2-3705.1(1)

The General Assembly enacted VFOIA to "ensure[] the people of the Commonwealth ready access to public records in the custody of a public body or its officers and employees." Code § 2.2-3700(B). "Under VFOIA, '[e]xcept as otherwise specifically provided by law, all public records shall be open to citizens of the Commonwealth . . . during the regular office hours of the custodian of such records.'" *Bergano v. City of Virginia Beach*, 296 Va. 403, 408 (2018) (alteration in original) (quoting Code § 2.2-3704(A)). Moreover, "[a]ll public records . . . shall be presumed open, unless an exemption is properly invoked." Code § 2.2-3700(B).

The legislature has set forth clear statutory canons of construction for the VFOIA. "By its own terms, the statute puts the interpretative thumb on the scale in favor of disclosure: 'The provisions of [VFOIA] shall be liberally construed to promote an increased awareness by all persons of governmental activities and afford every opportunity to citizens to witness the

4

operations of government.'" *Fitzgerald v. Loudoun Cnty. Sheriff's Off.*, 289 Va. 499, 505 (2015) (quoting Code § 2.2-3700(B)) (alteration added).  Moreover, "[a]ny exemption from public access to records . . . shall be narrowly construed and no record shall be withheld . . . unless specifically made exempt pursuant to this chapter."  Code § 2.2-3700(B).

This Court's role in interpreting a statute is a narrow one.  "In construing statutory language, we are bound by the plain meaning of clear and unambiguous language."  *White Dog Publ'g, Inc. v. Culpeper Cnty. Bd. of Supervisors*, 272 Va. 377, 386 (2015).  "Where the General Assembly has expressed its intent in clear and unequivocal terms, it is not the province of the judiciary to add words to the statute or alter its plain meaning."  *Couplin v. Payne*, 270 Va. 129, 137 (2005) (quoting *Jackson v. Fidelity & Deposit Co.*, 269 Va. 303, 313 (2005)).  However, "[i]f a statute is subject to more than one interpretation, this Court must 'apply the interpretation that will carry out the legislative intent behind the statute.'"  *JSR Mechanical, Inc. v. Aireco Supply, Inc.*, 291 Va. 377, 383 (2016) (quoting *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007)).  Of course, just because words in isolation may mean different things in different contexts, that does not render the statute, in toto, ambiguous.  Our function is to interpret the statute in a manner that reflects the legislative intent.

### 1.  Plain meaning of Code § 2.2-3705.1(1)

Code § 2.2-3705.1 outlines exemptions to the mandatory disclosure provisions of VFOIA and requires "[r]edaction of information excluded under this section . . . in accordance with § 2.2-3704.1."  Code § 2.2-3704.01 states that "[n]o provision of this chapter is intended, nor shall it be construed or applied, to authorize a public body to withhold a public record in its entirety on the grounds that some portion of the public record is excluded from disclosure by this chapter or by any other provision of law."  "[O]nly portions of the public record containing

5

information subject to an exclusion . . . may be withheld" and the entirety of a record may be withheld "only to the extent . . . that an exclusion . . . applies to the entire content of the public record." *Id.*

Substantively, Code § 2.2-3705.1(1) exempts "[p]ersonnel information concerning identifiable individuals" from disclosure. VFOIA does not completely define the operative term "personnel information." Code § 2.2-3701. Therefore, we look to the plain and ordinary meaning of its terms.

"Personnel" can have at least four meanings: "[A] body of persons employed in some service;" "persons of a particular . . . group;" "a body of employees that is a factor in business administration;" and "the division of an organization concerned primarily with the selection, placement, and training of employees and with the formulation of policies, procedures, and relations with employees or their representatives." Webster's Third International Dictionary 1687 (2002). The word "personnel" could mean persons employed by the government, or independent contractors, or volunteers in a government-run activity. It could also mean members of the human resources division or some other group of employees.

VFOIA defines "information" "as used in [Chapter 37], unless the context requires a different meaning," as "the content within a public record that references a specifically identified subject matter." Code § 2.2-3701 (alteration added). However, VFOIA does not define "content." *Id.* "Content" can plausibly mean multiple things, including: "[T]he topics, ideas, facts or statements in a book, document, or letter;" "essential meaning or significance;" "capacity, size;" "something that constitutes a part or element or a series of parts considered abstractly or without precise determination;" and "the amount of specified material contained, present, or yielded." Webster's Third International Dictionary 492 (2002). Each of these

6

definitions presents a variation of the common usage of "content" and demonstrates that the word is subject to multiple interpretations.

Code § 2.2-3705.1(1) identifies the subject matter in "personnel information" by using the word "personnel" to modify "information." Moreover, "personnel information" is modified by the phrase "concerning identifiable individuals." Code § 2.2-3705.1(1). By its plain meaning, this exclusion applies solely to "personnel information" relating to specific persons. Therefore, under the statute, "personnel information" means "content within a public record that references personnel and relates to specific persons." Problematically, "content" and "personnel" are subject to multiple interpretations, and consequently we must look to the legislative history and intent to construe the General Assembly's intended meaning of the complete phrase.

## 2. Legislative History

"[VFOIA] 'has existed, in one form or another, since 1968' with the primary purpose of facilitating 'openness in the administration of government.'" *Fitzgerald*, 289 Va. at 505 (quoting *American Tradition Inst.*, 287 Va. at 339). At its inception, VFOIA contained an exemption for "personnel records" and grouped the exemption with, among other things, "medical and mental records" and "scholastic records." 1968 Acts ch. 479.

In 1983, a member of the House of Delegates asked the Attorney General of Virginia whether grievance procedure documents possessed by a school board constituted "personnel records" under VFOIA. 1983-1984 Op. Atty. Gen. 314, 314. The Attorney General noted that VFOIA "[did] not define the term 'personnel records.'" *Id.* The Attorney General opined that "[n]ormally, personnel records include those records maintained by a public agency which identify an employee, his rank or classification, rate of pay, performance and/or job history." *Id.*

7

The Attorney General's opinion qualified this answer noting that "[n]ecessarily, [the] question can be answered only by examining the specific document." *Id.* In 1986, the Attorney General of Virginia emphasized that prior opinions of the Attorney General "have held that to be excepted personnel records must contain information concerning identifiable individuals." 1985-86 Op. Atty. Gen. 333, 334. As examples, the Attorney General listed "information concerning employee evaluation, specifics as to the nature of employment, professional qualifications, and job applications." *Id.*

Eventually, the legislature narrowed the "personnel records" exemption to reflect the 1986 opinion of the Attorney General, such that the term covers only "personnel records containing information concerning identifiable individuals." 1989 Acts ch. 358 (emphasis omitted). The exemption remained the same until 2016, even as VFOIA was reenacted and recodified. *See* 1999 Acts ch. 703, 2001 Acts ch. 844, 2016 Acts ch. 620.

During this period, the Virginia Freedom of Information Advisory Council ("Advisory Council") interpreted the exemption consistent with the opinions of the Virginia Attorney General. *See* Virginia Freedom of Information Advisory Council, Advisory Op. AO-04-03 (Feb. 14, 2003); Advisory Op. AO-07-02 (July 23, 2002); Advisory Op. AO-28-01 (May 31, 2001). The Advisory Council stated that the exemption applies "to any record held by a public body that relate[d] to an identifiable employee concerning the nature of the employment, job capacity or performance, or is otherwise related to the scope of employment." Virginia Freedom of Information Advisory Council, Advisory Op. AO-04-03 (Feb. 14, 2003). It also opined that "[b]ecause of the nature of the information contained within a personnel record, the personnel records exemption is a privacy-based exemption, designed to protect the subject of the record from the dissemination of personal information." *Id.*

8

In 2015, this Court decided *Virginia Dept. of Corrections v. Surovell*, holding that VFOIA contained no requirement of redaction or partial disclosure where only part of a document is exempt. 290 Va. 255, 268-69. In response, the General Assembly enacted a right of redaction, intended to reverse this Court's decision. *See* 2016 Acts ch. 620; Virginia Freedom of Information Advisory Council, *Report to the Governor and General Assembly of Virginia* (Dec. 2015), House Doc. No. 17 (2015); Virginia Freedom of Information Advisory Council, *Report to the Governor and General Assembly of Virginia* (Dec. 2016), House Doc. No. 4 (2016). The 2016 amendment to VFOIA contained an enactment clause stating, "[t]hat the provisions of this act are declaratory of the law as is [sic] it existed prior to the September 17, 2015 decision of the Supreme Court of Virginia in the case of the *Department of Corrections v. Surovell*." 2016 Acts ch. 620. In doing so, the legislature also amended "personnel record containing information concerning identifiable individuals" to "personnel information concerning identifiable individuals" and defined "information." *Id.* By adding a redaction provision and limiting the exemption to "information" instead of the entirety of a public record, the General Assembly demonstrated its intent to narrow the exception and provide for partial disclosure.

### 3. Persuasive Authority[2]

Finally, we find a brief survey of other states' approaches useful when construing the personnel information exemption. Virginia is joined by only four other states in using a "personnel information" statutory exemption: Florida, South Dakota, Massachusetts, and Texas. *See* Fla. Stat. § 119.071(4); Mass. Gen. Laws Ann. ch. 4, § 7; S.D. Codified Laws § 1-27-1.5(7); Tex. Code § 552.102. Of these, only Florida, Massachusetts, and Texas, attempt to define

---

[2] We recognize that the statutes of other jurisdictions are expressions of policies which may be different from those inherent in VFOIA. Nevertheless, a review of statutory language from these states is informative and revealing.

9

"personnel information" in some way. *See* Fla. Stat. § 119.071(4); Mass. Gen. Laws Ann. ch. 4, § 7; Tex. Code § 552.102. Florida defines the term by specifying various pieces of information including social security numbers, medical information, home addresses, and telephone numbers. Fla. Stat. § 119.071(4). The Massachusetts statute exempts "personnel . . . information and any other materials or data relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of personal privacy." Mass. Gen. Laws Ann. ch. 4, § 7. Moreover, the Massachusetts privacy exemption is "neither rigid nor precise." *See Worcester Telegram & Gazette Corp. v. Chief of Police of Worcester*, 787 N.E.2d 602, 606 (Mass. App. Ct. 2003). Texas exempts "[p]ersonnel [i]nformation" "if it is information in a personnel file, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." Tex. Code § 552.102.

The federal FOIA statute and many states use other combinations of "personal," "personnel," "information," "files," and "record" to describe their exemptions. *See, e.g.*, 5 U.S.C § 552(b)(6) ("personnel . . . files"); Ark. Code § 25-19-105(b)(12) ("personnel records"); Conn. Gen. Stat. § 1-210(b)(2) ("personnel . . . files"); Haw. Rev. Stat. § 92F-14(b) ("[i]nformation in an agency's personnel file"); Iowa Code § 22.7(11)(a) ("[p]ersonal information in confidential personnel records"); Neb. Rev. Stat. § 84-712.05(8) ("[p]ersonal information in records regarding personnel"); N.M. Stat. § 14-2-1.1 ("protected personal identifier information"); N.Y. Pub. Off. Law. § 89(2)(a) ("identifying details"); Wis. Stat. § 19.36(10) ("[e]mployee personnel records"). While these exemptions use different terms, and therefore are of limited use in interpreting the Virginia statute, each exemption contains a privacy limitation. *See, e.g.*, 5 U.S.C § 552(b)(6) ("clearly unwarranted invasion of privacy"); Ark. Code § 25-19-105(b)(12) ("clearly unwarranted invasion of privacy"); Conn. Gen. Stat. § 1-210(b)(2) ("invasion of personal

10

privacy"); Haw. Rev. Stat. § 92F-14(a) ("clearly unwarranted invasion of personal privacy");

Iowa Code § 22.7(11)(a) ("confidential"); N.M. Stat. § 14-2-1.1 ("protected personal identifier

information"); N.Y. Pub. Off. Law. § 89(2)(b)(v) ("disclosure of information of a personal

nature").

States have implemented the privacy component in such statutes by using either a

balancing test or an objective test.  Hawaii employs a balancing test, providing that "[d]isclosure

of a government record shall not constitute a clearly unwarranted invasion of personal privacy if

the public interest in disclosure outweighs the privacy interest of the individual."  Haw. Rev.

Stat. § 92F-14(a).  In contrast, New York uses an objective test to define its privacy limitation,

"an unwarranted invasion of personal privacy," as "what would be offensive and objectionable to

a reasonable [person] of ordinary sensibilities."  *Humane Soc. of U.S. v. Fanslau*, 863 N.Y.S.2d

519, 538 (N.Y. App. Div. 2008) (alteration in original) (quoting *Matter of Beyah v. Goord*, 766

N.Y.S.2d 222, 225 (N.Y. App. Div. 2003)).  The comparative "balancing test" permits a trial

court to weigh public interest and privacy.  An objective "reasonable person standard" constrains

trial courts when the public interest is already identified by the legislature.  These two tests show

a range of options for implementing a privacy-based exemption.

### 4.  The Definition of "Personnel Information"

In construing the terms "personnel" and "content" we are guided by the statutory canons

of construction, legislative history, and the General Assembly's intent.  As an exemption to

VFOIA, the terms of Code § 2.2-3705.1(1) are to be narrowly construed to provide open access

to public records.  Code § 2.2-3700(B).

The meaning of "personnel" most clearly intended by the legislature is "a body of

persons employed in some service" or government employees.  Webster's Third International

11

Dictionary 1687 (2002). This definition is narrowly limited to those employed by the government and does not encompass any individual whose information merely happens to appear in a public record. Such a reading furthers the stated goal of ensuring public access to government business conducted by employees of that government. It also reflects the employment connection acknowledged by the Advisory Council and Virginia Attorneys General. *See* 1985-86 Op. Atty. Gen. 333, 334; 1983-1984 Op. Atty. Gen. 314, 314; Virginia Freedom of Information Advisory Council, Advisory Op. AO-04-03 (Feb. 14, 2003); Advisory Op. AO-07-02 (July 23, 2002); Advisory Op. AO-28-01 (May 31, 2001).

The more difficult term to construe is "content." The most usable plain meaning definition is "the topics, ideas, facts or statements in a book, document, or letter." Webster's Third International Dictionary 492 (2002). This definition is constrained to a "book, document, or letter" like "information" in VFOIA, which is limited to what appears in a "public record." Code § 2.2-3701. This construction, however, fails to include data, which is synonymous with facts. Burton's Legal Thesaurus 157 (5th ed. 2013). The definition includes vague terms such as "topics" and "ideas" that would be inapplicable to "identifiable individuals." Further, it would omit personal "data" such as social security numbers and dates of birth. Thus, we conclude that the plain and ordinary meaning of content as employed by the legislature is "data, facts, or statements."

Finally, in construing the "personnel information" exemption, we cannot read each word in isolation. Instead, to define the phrase we must address how information is modified by personnel. Reading the definitions narrowly, we recognize that the only content exempt from disclosure is that which is tied to the employment of the individual in some way, and which otherwise would not be disclosed to the employer. The former limitation recognizes the modifier

12

chosen by the legislature – the term "personnel" – and the employment component recognized by the Advisory Council and Attorney General Opinions.[3]  The latter consideration narrowly construes the reach of this provision, so as not to exempt all employment information from the view of the public, but only that which is private.  Therefore, we hold that "personnel information" for purposes of Code § 2.2-3705.1(1) means data, facts, or statements within a public record relating to a specific government employee, which are in the possession of the entity solely because of the individual's employment relationship with the entity, and are private, but for the individual's employment with the entity.

This definition recognizes that the "personnel information" exemption, like the "personnel record" exemption before it, is a "privacy-based exemption, designed to protect the subject of the record from the dissemination of personal information."  Virginia Freedom of Information Advisory Council, Advisory Op. AO-04-03 (Feb. 14, 2003).  Absent statutory guidance on what is private, we will not legislate from the bench regarding which specific pieces of information are private.  Likewise, this Court will not substitute its own balancing test, where the legislature has "put[] the interpretative thumb on the scale in favor of disclosure." *Fitzgerald*, 289 Va. at 505.  Instead, we look to an objective test, and hold that data, facts, and statements are private if their disclosure would constitute an "unwarranted invasion of personal privacy" to a reasonable person under the circumstances.  *See Fanslau*, 863 N.Y.S.2d at 538. Moreover, the "precise contours" of what content qualifies as private are "neither rigid nor

---

[3]  Here we reiterate that this definition is not a wholesale rejection of the prior opinions of the Advisory Council and Attorney General.  Instead, we draw from those sources to interpret the new definition of information added in 2016.  For instance, content previously defined as "evaluations, specifics as to the nature of the employment, professional qualifications . . . job capacity or performance, or . . . otherwise related to the scope of employment" may also fall under the definition of information set forth above.  Virginia Freedom of Information Advisory Council, Advisory Op. AO-04-03 (Feb. 14, 2003).  But that material must be evaluated using the statutory definition of information, the objective privacy test, and the right of redaction.

precise" and require determination in the context of each case. *Worcester Telegram & Gazette Corp.*, 787 N.E.2d at 606.

### C. Application of the "Personnel Information" Exemption

Applying the definition to the documents in this case, we are guided by the 2016 legislative revisions allowing for redactions to partially exempt documents. Specifically, "[o]nly those portions of the public record containing information subject to an exclusion . . . may be withheld" and the entirety of a record may be withheld "only to the extent . . . that an exclusion . . . applies to the entire content of the public record." Code § 2.2-3704.01. The circuit court understood this mandate and applied it to the employee petition.

"[A]s a threshold matter[, ]a court's *in camera* review of the records constitutes a proper method to balance the need to preserve confidentiality of privileged materials with the statutory duty of disclosure under VFOIA." *Bergano*, 296 Va. at 410 (quoting *Surovell*, 290 Va. at 269) (alteration added). The circuit court allowed the Town to withhold the entirety of all five documents at issue without any redactions, using definitions of "personnel record" under a prior version of Code § 2.2-3705.1. However, we recognize that the trial court was without clear guidance on what constitutes "personnel information" under VFOIA. Our role as an appellate court is a limited one, and the circuit court did not have the benefit of the definition set forth above. The trial court is in the best position to assess the "precise contours" of what is private in the context of this case, and therefore we will remand the case for further proceedings consistent with this opinion.

### II. Assignments IV and V: Prevailing Party and Attorney's Fees and Costs

In Hawkins' fourth and fifth assignments of error, he challenges the circuit court's purported holdings that he "was not a prevailing party in the case" and that "he was not entitled

14

to attorney's fees and costs in this case."  However, because Hawkins failed to obtain rulings from the circuit court on either issue, we find these assignments of error waived.

"VFOIA provides for the recovery of costs and attorney's fees when (1) a court finds that the denial of the request was 'in violation of the provisions' of VFOIA and (2) a party 'substantially prevails on the merits of the case.'"  *Bergano*, 296 Va. at 411 (quoting Code § 2.2-3713(D)).  Rule 5:25 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling."  "In analyzing whether a litigant has satisfied the requirements of Rule 5:25, this Court has consistently focused on whether the trial court had the opportunity to rule intelligently on the issue."  *Scialdone v. Commonwealth*, 279 Va. 422, 437 (2010).  "If [the] opportunity [to address an issue] is not presented to the trial court, there is no ruling by the trial court on the issue, and thus no basis for review or action by this Court on appeal."  *Id.* (alteration in original) (quoting *Riverside Hosp., Inc. v. Johnson*, 272 Va. 518, 526 (2006)).

The circuit court made no ruling on attorney's fees or on whether Hawkins "substantially prevailed."  The only reference to which party prevailed was the circuit court's request that the Town draft the final order because "[t]he Court agreed with the Town's position more than it did not."  This is contrary to a holding that Hawkins "substantially prevailed" or did not.  Moreover, the letter opinion and the final order are devoid of any mention of attorney's fees and costs.[4]

The absence of a ruling on either issue is understandable because Hawkins did not present either issue to the circuit court.  He did not request fees and costs in his opposition to the Town's demurrer, or in his response to the Towns' log of documents.  Hawkins did not raise the issue of fees at all during either of his hearings before the circuit court.  Even when the Town

---

[4] Given our ruling today, we do not address the issue as to whether an attorney, who proceeds pro se, may be granted attorney fees.

15

moved for entry of a final order, Hawkins did not raise a request for fees or file any response. The only mention of fees occurred in the Town's motion, where it stated that "[Hawkins] wants to address the issue of attorney's fees." Hawkins endorsed the order with objections but did not notice a hearing or request that the circuit court revise its order to address either issue. Because Hawkins failed to obtain a ruling on the prevailing party issue or the issue of attorney's fees, we find there is no ruling to address on appeal, and consequently affirm the circuit court on both assignments.

## CONCLUSION

The circuit court erred in its interpretation and application of the personnel information exemption under VFOIA. However, Hawkins failed to obtain a ruling on whether he was a prevailing party or on the issue of attorney's fees and costs. Therefore, we reverse the judgment of the circuit court with respect to the first three assignments of error, affirm the judgment on assignments four and five, and remand this matter for further proceedings consistent with this opinion.

*Affirmed in part,*
*reversed in part,*
*and remanded.*